In re ANTIQUITIES OF NEVADA, INC.,
aka Antiquities International, Debtor.

ANTIQUITIES OF NEVADA,
INC., Appellant,

v.

BALA CYNWYD CORPORATION,
Appellee.

BAP No. NV–94–1229–RVAs.

Bankruptcy No. 92–24033–RCJ.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 21, 1994.

Decided Nov. 10, 1994.

---

David W. Huston, Las Vegas, NV, for appellant.

Rodney M. Jean, R. Scot Grierson, Las Vegas, NV, for appellee.

Before RUSSELL, VOLINN and ASHLAND, Bankruptcy Judges.

*OPINION*

RUSSELL, Bankruptcy Judge:

The debtor attempted to modify a confirmed Chapter 11[1] plan. The bankruptcy court ruled that the confirmed plan was "substantially consummated", thereby statutorily barring modification. The debtor appeals. We AFFIRM.

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## I. FACTS

The debtor/appellant, Antiquities of Nevada, Inc., aka Antiquities International ("Antiquities"), is a retailer in the Forum Shopping Center at Caesar's Palace in Las Vegas, Nevada. The appellee, Bala Cynwyd Corp. ("Bala Cynwyd") is the only secured creditor of Antiquities.

In October 1991, Antiquities obtained a $350,000 loan from Bala Cynwyd. Antiquities executed a promissory note ("note") and security agreement in Antiquities' inventory in favor of Bala Cynwyd. The loan was to be used to pay off existing promissory notes and to purchase inventory.

In early 1992, Antiquities defaulted on the note. The parties executed a workout agreement and Antiquities began to make payments required under the workout agreement. After the third payment, Antiquities stopped making payments to Bala Cynwyd. Based on the second default, Bala Cynwyd commenced a state court action. In September 1992, Antiquities filed a Chapter 11 petition.

On March 29, 1993, the bankruptcy court entered an order confirming Antiquities' plan. The plan provided for a 100% payoff of all debts owed by Antiquities over a 22 month period, with an option to extend the payoff term to 24 months depending on the outcome of a dispute over the payment of Bala Cynwyd's attorneys' fees.[2] The majority of the plan dealt with payouts to Bala Cynwyd. The plan provided for 6 monthly payments in the amount of $10,000, plus interest at 10% for each of those months; 11 monthly payments of $15,000, plus interest at 10%; and 5 monthly payments at $20,000, plus interest at 10% and attorneys' fees. The payment schedule began on February 28, 1993 and was to end on November 30, 1994.

2. Antiquities and Bala Cynwyd subsequently entered into a stipulation wherein Antiquities agreed to pay $80,000 of Bala Cynwyd's attorneys' fees in exchange for the dismissal of Bala Cynwyd's state court action against principals of Antiquities.

Even though Antiquities was current with all the payments, it filed a motion to modify the confirmed plan in October, 1993. In its motion for modification, Antiquities stated that average sales had dropped by $26,267 per month since February 1993, compared to the previous year. The modified plan sought to add an additional 2 years to the term of the plan and reduce the amount of the monthly payment to Bala Cynwyd to $8,000 per month, plus interest.

Antiquities also sought a modification in the level of the inventory collateral. Under the plan, Antiquities was required to maintain inventory collateral of no less than $525,-000. Antiquities requested a reduction of inventory collateral to $450,000 and allowance of a dollar for dollar reduction against future principal payments.

On January 4, 1994, the bankruptcy court denied the motion to modify the confirmed plan. Antiquities filed a motion for reconsideration. On February 14, 1994, the bankruptcy court denied the motion for reconsideration. Antiquities timely filed its notice of appeal.

## II. ISSUE

Whether the debtor's confirmed plan had been "substantially consummated," thereby statutorily barring modification pursuant to § 1127(b).

## III. STANDARD OF REVIEW

■■■ Whether a plan has been "substantially consummated" is a question of fact to be determined upon the circumstances of each case. *In re Jorgensen*, 66 B.R. 104, 106 (9th Cir. BAP 1986). Findings of fact are reviewed for clear error. *In re Perez*, 30 F.3d 1209, 1212 (9th Cir.1994). A bankruptcy court's statutory interpretation of the Bankruptcy Code is a conclusion of law reviewed *de novo*. *In re Reeves*, 164 B.R. 766, 767 (9th Cir. BAP 1994).

## IV. DISCUSSION

A. *Modification of Antiquities' Plan*

1. *Substantial Consummation*

■■■ The post-confirmation modification of a plan is governed by 11 U.S.C. § 1127(b). Section 1127(b) provides:

> *The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan,* but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 [classification of claims] and 1123 [content requirements for a plan] of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(b) (emphasis added).

"Substantial consummation" is defined in 11 U.S.C. § 1101(2) as follows:

> "substantial consummation" means—
>
> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2)(A)–(C).

The standard for modification is significantly more restrictive for post-confirmation modifications than for pre-confirmation modifications. In fact, Congress drafted § 1127(b) to safeguard the finality of plan confirmation. *See In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr.D.Conn. 1989). If this were not the case, a proponent of a plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for creditors to vote in favor of a plan.

Antiquities conceded that §§ 1101(2)(B) and (C) have been met, since distribution has begun under the plan and the debtor and its management are in place and have assumed their responsibilities under the plan. Thus, the question to be decided is whether all or substantially all of the property proposed to

be transferred in Antiquities' confirmed plan has been transferred.

█ There are two primary schools of thought on what constitutes "substantial consummation." *Compare In re Heatron, Inc.,* 34 B.R. 526 (Bankr.W.D.Mo.1983) *with In re Hayball Trucking, Inc.,* 67 B.R. 681 (Bankr. E.D.Mich.1986). One school utilizes a rough percentage of payments test, which lumps distributions to creditors together with transfers of property proposed to be transferred, and requires more than a mere preponderance of *both* distributions and transfers to be completed before "substantial consummation" occurs. *Heatron,* 34 B.R. at 529. The other school interprets transfers of property to apply to non-cash transfers, and distributions to *refer* to cash payments under the plan, which gives effect to every provision in § 1101(2). *Hayball,* 67 B.R. at 684. The proponent of the plan bears the burden of proving "substantial consummation" has *not* occurred. *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 266 (Bankr.D.P.R.1991).

Antiquities stated in its brief that this panel "has adopted the *Heatron* standard for defining 'substantial consummation' for modification purposes, as payout of more than a mere preponderance of the debts owed." Antiquities based that statement on its reading of *In re Jorgensen,* 66 B.R. 104, 107 (9th Cir. BAP 1986) and *In re Hotel Associates of Tucson,* 165 B.R. 470, 474 (9th Cir. BAP 1994). We disagree. While the panels in *Jorgensen* and *Hotel Associates* quoted *Heatron,* both cases concerned whether a plan could be *confirmed* over a parties' objection, *not* whether it could be *modified.* Thus, *Jorgensen's* reference to *Heatron,* and *Hotel Associates'* reference to *Jorgensen,* were *dicta.*[3]

Several courts have criticized the *Heatron* view because it essentially nullifies the specific statutory language of § 1101(2)(C). *In re Burnsbrooke Apartments of Athens, Ltd.,* 151 B.R. 455, 458 (Bankr.S.D.Ohio 1992)

("better reasoned approach is *Hayball Trucking*"); *Scotland Guard,* 139 B.R. at 266 (adopting *Hayball* analysis); *In re Burlingame,* 123 B.R. 409, 412 (Bankr.N.D.Okla. 1991) (rejecting *Heatron*); *In re Bedford Springs Hotel, Inc.,* 99 B.R. 302, 303 (Bankr. W.D.Pa.1989) (subsections (A) and (C) address very different items and require different treatment); *United States v. Novak,* 86 B.R. 625, 631 (D.S.D.1988) (rejecting percentage of payment test under *Heatron*).

The Supreme Court recently reiterated "the settled rule that a statute *must,* if possible, be construed in such fashion that *every* word has some operative effect." *United States v. Nordic Village, Inc.,* 503 U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) (emphasis added). The Ninth Circuit Court of Appeals has similarly held that courts "must avoid statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress." *In re Oxborrow,* 913 F.2d 751, 754 (9th Cir.1990).

In noting the distinction between subsection (A) and (C), the court in *Hayball* aptly stated:

Although the statutory definition of "substantial consummation" is not entirely clear, the Court concludes that distributions to creditors over a period of time are not the types of transfers of property proposed by the plan to be transferred contemplated in subsection (A). In order to give effect to the provision requiring only commencement of such distributions, it must be concluded that the property transfers contemplated in subsection (A) include other types of transfers such as are often contemplated on or shortly after the effective date of a confirmed plan. Such transfers might include the transfer of a security interest to unsecured creditors, as occurred here, a transfer of stock to creditors or third parties, a transfer of promis-

---

3. The definition of "substantial consummation" was considered in *Jorgensen* and *Hotel Associates* in determining whether to dismiss either appeal on the basis of mootness. The doctrine of mootness by its very nature must be determined on a case by case basis. One commentary suggests that "substantial consummation is not necessari-

ly the guiding principle in this instance. There can be activity having occurred which falls short of substantial consummation but which, nevertheless, cannot be undone. In such an instance, it should be just as relevant to consider the doctrine of mootness...." 5 *Collier on Bankruptcy* ¶ 1101.02 at 1101–6 (15th ed. 1993).

sory notes to creditors, transfers of property to secured creditors in satisfaction of their claims, or transfers of property by third parties to the debtor.

Thus, *subsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed undertaken to shape the new financial structure of the debtor and distributions of dividends to creditors made over a period of time from operating revenues.* "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter.

*Hayball,* 67 B.R. at 684 (emphasis added).

In arguing the *Heatron* view, Antiquities contended that substantial consummation has not occurred because its distributions of 58% on unsecured debt and 20% of distributions due to Bala Cynwyd under the confirmed plan do not constitute transfers of all or substantially all of the property proposed by the plan to be transferred.

In contrast, Bala Cynwyd asserts that the plan did not call for any transfers of property, and as such the plan was substantially consummated. We agree. The confirmed plan does not provide for any transfers of property.

Since Antiquities has assumed management and control of the property administered under the confirmed plan, and commenced distribution of payments on both short and long term debt on the effective date, we hold that the plan has been "substantially consummated." In finding that the plan was "substantially consummated", we reject the percentage of payments approach found in *Heatron*.

## V. CONCLUSION

The bankruptcy court correctly concluded that the confirmed plan had been "substantially consummated." In addition, Antiquities failed to prove sufficient unexpected changed circumstances to warrant modification of the confirmed plan. Accordingly, we AFFIRM.