**In re H & L DEVELOPERS, INC., Debtor.**

**Bankruptcy No. 92–15847 DWS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 28, 1994.

Gary P. Lightman, Philadelphia, PA.

Andrew C. Kassner, Philadelphia, PA.

Joseph Minni, Philadelphia, PA.

### *MEMORANDUM OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Debtor's Motion for Approval of Disclosure Statement and Plan Voting Procedures (the "Motion"). The Debtor seeks approval of a Disclosure Statement in connection with its Third Amended Plan of Reorganization filed on October 3, 1994, more than one year after confirmation of Debtor's Second Amended Plan of Reorganization (the "Confirmed Plan"). The stimulus for the Third Amended Plan, discussed in a companion Opinion and Order issued in connection with the Motion of Arvida/JMB Partners and Arvida Realty Sales ("Arvida") to Dismiss Complaint or Motion for Abstention, is not relevant to determination of this Motion which must address as a threshold matter whether modification of the Confirmed Plan is permissible or barred by reason of the substantial consummation of Debtor's Confirmed Plan. 11 U.S.C. §§ 1127(b) and 1101(2). The Motion is opposed by Arvida which contends that (i) modification is not

permissible because the Confirmed Plan has been substantially consummated and (ii) the proposed Disclosure Statement is deficient under 11 U.S.C. § 1125. Because we find that the Confirmed Plan has been substantially consummated, thus foreclosing the contemplated amendment, we need not reach the sufficiency of the Debtor's disclosure.

### BACKGROUND

On August 10, 1993 this Court entered its Order confirming Debtor's Second Amended Chapter 11 Plan filed on June 18, 1993.[1] The Confirmed Plan classified claims and interests in five classes: Priority Claims consisting of administrative claims and priority tax claims (Class 1), Sun Bank Secured Claim (Class 2), Non–Insider Unsecured Claims (Class 3A), Insider Unsecured Claims (Class 3B) and Shareholder's Interests (Class 4). The treatment of these classes as it pertains to this Motion will be set forth in some detail.

Class 1 allowed claims shall receive full payment on the Effective Date unless other treatment is agreed upon. The Effective Date is defined as the first Business Day three months after the Confirmation Date, i.e., November 11, 1993. The only such claimant identified is Lightman & Associates, Debtor's counsel who have not been paid. However, the priority tax claim of $40,000 has been paid through an escrow established with Sun Bank. See Class 2 below.

The Class 2 allowed secured claim shall receive $22,000 from the sale of each lot of the Debtor's property until paid in full provided that funds from at least 11 lots are paid by March 1, 1994 and funds from an additional 23 lots are paid by March 1, 1995. Claimant shall receive monthly interest payments and additional security consisting of the assignment of a note receivable and mortgage, the guaranties of Mr. and Mrs. Laessig and the beneficial interest in $900,000 of life insurance on Mr. Laessig. A tax escrow account was to be established at Sun Bank and Debtor was to fund that account to pay 1993 and 1994 real estate taxes.

At a hearing on the Motion, Debtor's principal, Ronald Laessig, testified that the payments linked to lot sales had been made as had the interest although the Debtor was presently two months behind and notice of default had been received. Real estate taxes were also escrowed as required, and the taxing authority has been paid $40,000 by the reorganized Debtor through the Sun Bank escrow. The terms of the treatment of Class 2, according to Mr. Laessig, derive from an agreement between the Debtor, its principals and Sun Bank reached during the pendency of the Chapter 11 case and contemplated to be incorporated in Debtor's plan of reorganization, Exhibit D–1, performance of which commenced prior to confirmation of the Confirmed Plan.

Class 3A allowed non-insider unsecured claims are to receive four annual installment payments of 20%, 25%, 25% and 25% of their allowed claim commencing the first anniversary of the Effective Date, i.e., November 11, 1994. According to Mr. Laessig's testimony, there have been no payments to unsecured creditors. There admittedly have been post-confirmation interest payments to the Marcucci family to "reduce their debt". When questioned by the Court as to the basis of these payments, Mr. Laessig stated that the Marcucci family held a second mortgage on the property. This is puzzling since a second mortgage is not disclosed in either the Disclosure Statement in support of the Second Amended Plan or in the newest Disclosure Statement in support of the Third Amended Plan. Rather the Marcucci's have been referred to by Debtor's counsel as unsecured creditors who have pledged their support of Debtor's new modification. A review of Debtor's Report of Plan Voting confirms the latter characterization as Catherine Marcucci voted a $400,000 unsecured claim in favor of the Second Amended Plan.

Class 3B allowed insider unsecured claims are to receive 5% of their allowed claim on the fourth anniversary of the Effective Date. This payment has not been made.

Class 4 interestholder (Ronald Laessig) shall retain his full equity interest in consid-

---

1. The Order was entered by the Honorable Bruce I. Fox. On November 15, 1993, the case was transferred to the docket of the Honorable Diane W. Sigmund as part of the reassignment of cases occasioned by the expansion of the bankruptcy bench in this district.

eration for contributions of new value, including payment of 1992 real estate taxes, funding of post-petition operations and providing his and his wife's guaranty. These contributions have been made although it appears that rather than provide funds, Mr. Laessig has made loans to the reorganized Debtor to meet his obligations under the Confirmed Plan.

While apparently having some difficulty selling lots as contemplated in the Confirmed Plan,[2] the reorganized Debtor nonetheless has constructed a model home and sold six units.

## DISCUSSION

Section 1127(b) of the Bankruptcy Code deals with modification of a plan of reorganization after confirmation and states that modification is permitted at any time after confirmation but before substantial consummation of the plan. 11 U.S.C. § 1127(b). *See In re Northampton Corporation,* 39 B.R. 955, 956 (Bankr.E.D.Pa.), *aff'd,* 59 B.R. 963 (E.D.Pa.1984). The parties agree that the issue before the court then is whether there has been a substantial consummation of the Confirmed Plan.

■ Substantial consummation is defined in Section 1101(2) to mean:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). All three elements must be present to support a finding of substantial consummation. *Federal Land Bank of Louisville v. Gene Dunavant and Son Dairy (In re Gene Dunavant and Son Dairy),* 75 B.R. 328, 331–32 (M.D.Tenn.1987); *In re Scotland Guard Services, Inc.,* 139 B.R. 264, 265 (Bankr.D.P.R.1991).

■ Whether a plan has been substantially consummated is a question of fact to be determined upon the circumstances of each case and the evidence provided by the parties. *In re Stevenson,* 148 B.R. 592, 596 (D.Idaho 1992); *In re Jorgensen,* 66 B.R. 104, 106 (9th Cir. BAP 1986); *In re Bedford Springs Hotel, Inc.,* 99 B.R. 302, 303 (Bankr. W.D.Pa.1989). The burden is on the proponent of modification to show that the plan has not been substantially consummated. *In re Dam Road Mini Storage,* 156 B.R. 270, 271 (Bankr.S.D.Cal.1993); *Scotland Guard Services,* 139 B.R. at 266; *In re Modern Steel Treating Co.,* 130 B.R. 60, 64 (Bankr. N.D.Ill.1991), *aff'd,* 1992 WL 82966, 1992 U.S.Dist. LEXIS 5188 (N.D.Ill. Mar. 31, 1992).

### A.

■ Debtor argues that the first element of substantial consummation, i.e., the transfer of all or substantially all of the property proposed by the plan to be transferred, is not satisfied because the Confirmed Plan contemplates that "after the Confirmation Date, the Debtor shall market the individual lots of the Property to individual purchasers" (Section 5.1, Confirmed Plan) and less than half of the lots which comprise the Debtor's property have been sold. According to the Debtor until it sells all or substantially all of the lots, the property proposed by the plan to be transferred has not been sufficiently transferred for substantial consummation to occur. Arvida, on the other hand, points to Article VII of the Confirmed Plan which provides in accordance with Section 1141 of the Code that "the Debtor shall be vested with all of the Debtor's Property and Assets free and clear of all Claims, liens and other interests of all Claimants except the Sun Bank Secured Claim Lender." This, it submits, is the transfer in furtherance of substantial consummation. Additionally, the collateral assignments, guarantees and life insurance contemplated to be furnished to Sun Bank have also been provided.

■ We believe subsection (A) of the definition has been satisfied with the collater-

---

**2.** These difficulties are in the main attributed by the Debtor to the conduct of Arvida which is the subject of an adversary proceeding pending in this Court and a companion Opinion and Order.

al assignments and transfer of the guarantees and life insurance which are all the transfers contemplated by the Confirmed Plan. We do not view the lot sales which are essentially the business of the reorganized Debtor to be "transfers proposed by the plan." Rather we agree with the reasoning of the court in *In re Hayball Trucking, Inc.,* 67 B.R. 681, 684 (Bankr.E.D.Mich.1986) as to the nature of the transfers contemplated by subsection (A):

> Subsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed undertaken to shape the new financial structure of the debtor and distributions of dividends to creditors made over a period of time from operating revenues. "Substantial consummation" requires completion of the former, but only commencement of the latter.

*See also Scotland Guard,* 139 B.R. at 266. To read the statute differently would give no independent purpose to each subsection. In the Confirmed Plan the sales of the lots are the means of implementing the plan. The proceeds are the source of the payments to creditors. If we were to find that all or substantially all the lots had to be sold to satisfy subsection (A), we would render meaningless subsection (C) which finds substantial consummation when distribution to creditors commences. It is generally accepted that a statute should be read to give meaning to all its provisions, if possible. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) ("Statutory construction, . . ., is a holistic endeavor."). *See also In re Roach,* 824 F.2d 1370, 1372 (3d Cir.1987) (same).

> In order to give effect to the provision requiring only commencement of such distributions, it must be concluded that the property transfers contemplated in subsection (A) include other types of transfers contemplated on or shortly after the effective date of a confirmed plan. Such transfers might include the transfer of a security interest to unsecured creditors, a trans-

fer of stock to creditors, a transfer of promissory notes to creditors, transfers of property to secured creditors in satisfaction of their claims, or transfers of property by third parties to the debtor.

*Hayball Trucking,* 67 B.R. at 684. While *Hayball Trucking* considered whether distribution to creditors would be considered for the purpose of satisfying subsection (A), we believe that the reorganized Debtor's sales which were intended to fund those distributions are likewise not the type of transfers contemplated by subsection (A). Moreover, the interpretation urged by Debtor would render substantial consummation an illusive concept in a liquidation plan. Since the purpose of the substantial consummation requirement is to provide some finality to bankruptcy proceedings, *see id.,* we reject Debtor's overbroad interpretation.

### B.

The second element of substantial consummation, i.e., assumption of the business or the management of all or substantially all the property dealt with by the plan, is also satisfied. We do not read the Debtor's Memorandum in support of its Motion to contend otherwise. In any event, the record is clear that the Debtor is managing its business. Mr. Laessig testified that the model home has been constructed and six lots have been sold. Indeed his contentions that the conduct of Arvida is impeding the Debtor's efforts to sell lots implicitly acknowledges that the Debtor is managing the property dealt with by the Confirmed Plan.

### C.

Finally it is clear that the last element of substantial consummation, i.e., that distribution under the plan has commenced, has occurred. Even if we were to accept Debtor's argument that $200,000 of acknowledged post-confirmation payments to Sun Bank should not be taken into consideration because the payments were provided for pre-confirmation as part an agreement incorporated into the Confirmed Plan,[3] there

---

**3.** The agreement which was introduced as Exhibit D–1 is not signed or dated nor has any Court

Order approving the agreement been made part of this record. The terms of D–1 are repeated

is evidence of other payments having been made by the reorganized Debtor. Mr. Laessig testified that post-confirmation payments have been made to the Marcucci family allegedly on account of a second mortgage obligation. There is no mention of a new post-confirmation obligation to Marcucci in Debtor's Disclosure Statement in support of the proposed Third Amended Plan. Therefore we must conclude that these payments were made on account of the claim existing under the Second Amended Plan. While we do not understand why this creditor, which was included in Class 3A, has been paid and the other members of the Class have not,[4] the payments nonetheless evidence the commencement of distribution. Mr. Laessig also testified that in addition to Sun Bank and Marcucci, post-confirmation payments were made on account of real estate tax claims.

The Code is clear that a plan is substantially consummated when payments commence and distribution has commenced under this Confirmed Plan. To the extent Debtor states otherwise, we disagree.

## CONCLUSION

Having found that the Confirmed Plan is substantially consummated pursuant to § 1101(2), a modification will not be permitted under § 1127(b).

without reference to D–1 in the Confirmed Plan. Since there is ample evidence that distribution has commenced without reference to the Sun Bank payments, we need not base our decision on this part of the factual record. However, we do not believe that the fact that the payments began pre-confirmation and continued as part of the Confirmed Plan negates our finding that these payments are distributions under the Confirmed Plan. Presumably by incorporating the agreement in the Confirmed Plan, Debtor intended as much. Debtor's argument that this interpretation of subsection (C) would result in substantial consummation occurring prior to commencement of distribution under the plan does not follow. In the first place, substantial consummation occurs only when all three elements of § 1101(2) are satisfied. Moreover, it is not the pre-confirmation payments to the creditor that

are distributions for the purpose of (C) but the plan distributions following the order of confirmation.

4. Class 3A was eligible for its first distribution November 11, 1994. That distribution was not made, according to Debtor, because of insufficient funds generated from the sale of lots. In other words, Debtor is in default of the Confirmed Plan. The proposed modification, which purportedly seeks to improve the distribution to unsecured creditors by sharing any recovery from the Arvida litigation up to 100% of the unsecured allowed claims, actually may be less favorable to creditors by deferring the first distribution for another year from a new Effective Date (three months after Confirmation Date) without providing for any interest for the delay.