**In the Matter of Leroy Joseph POTTS, Regina Marie Potts, Debtors.**

**Bankruptcy No. 92–30674.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Sept. 19, 1995.

---

Joseph D. Bradley and Aladean M. De-Rose, South Bend, Indiana, for Leroy Joseph Potts and Regina Marie Potts.

Rebecca Hoyt Fischer, South Bend, Indiana, for Pogoda Group.

## DECISION AND ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

On March 23, 1995, the Pogoda Group, an unsecured creditor of Leroy Joseph Potts and Regina Marie Potts (the "Potts"), debtors herein, filed its MOTION TO COMPEL COMPLIANCE WITH CONFIRMED CHAPTER 11 PLAN OF REORGANIZA-TION ("motion to compel compliance"). On August 31, 1995, the court held a hearing on the Pogoda Group's motion to compel compliance, after which, the court took the matter under advisement.

### Background

On March 13, 1992, the Potts filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Leroy Joseph Potts ("Mr. Potts") is both a seller of mobile homes and an owner of several mobile home parks. On April 15, 1993, the Potts filed their Plan of Reorganization (the "Plan"). The Potts, thereafter, filed an Amended Plan of Reorganization (the "Amended Plan") which was subsequently confirmed by order of the court on January 31, 1994. The current matter before the court involves the Pogoda Group's motion to compel compliance which was filed on March 31, 1995. In its motion to compel compliance, the Pogoda Group asserted that the Potts' violated the terms of their Amended Plan when they failed to make two (2) semi-annual payments, each in the amount of $6,750.00, which were due on August 10, 1994, and February 11, 1995, respectively. Motion to compel compliance, ¶ 4. The Pogoda Group asserted that the Potts' failure to make these payments represented a material default under the Amended Plan, within the meaning of 11 U.S.C. § 1112(b)(8). Id. at 5. Accordingly, the Pogoda Group requested that this court enter an order compelling the Potts to comply with the terms of their Amended Plan by making the two payments totaling $13,500. Further, the Pogoda Group requested that the court automatically dismiss this case should the Potts fail to make the payment in the amount of $13,500 within ten (10) days from the date of the court's order.

After having examined the Pogoda Group's motion to compel compliance, the court ordered the Potts to "comply with the terms of the Plan by making two (2) payments, in the total amount of $13,500.00 within ten (10) days from the date of such order, and that this bankruptcy proceeding will be automatically dismissed by the Court unless the Debtors comply with this Order." Thereafter, on April 10, 1995, the Potts filed a MOTION

FOR RECONSIDERATION OF COURT'S ORDER OF MARCH 31, 1995 ("motion for reconsideration"). The Pogoda Group filed an objection to the motion for reconsideration on April 13, 1995. In its Order of July 25, 1995, this court granted the Potts' motion for reconsideration, concluding that because the Pogoda Group's motion to compel compliance called for the potential dismissal of the Potts chapter 11 case, the Pogoda Group's motion should have been noticed out to all creditors pursuant to Bankruptcy Rule of Procedure 2002. Thereafter, on July 28, 1995, notice of the Pogoda Group's motion to compel compliance was served on all creditors. The court then held a hearing on the motion to compel compliance on August 31, 1995, after which the matter was taken under advisement.

In conjunction with the motion to compel compliance, the court has before it at this time the DEBTORS' MOTION TO MODIFY CONFIRMED AMENDED PLAN OF REORGANIZATION ("motion to modify amended plan of reorganization"), filed by the Potts on May 18, 1995. In their motion to modify amended plan of reorganization, the Potts sought permission from this court to amend paragraph 4.12 of the Potts' Amended Plan. This provision provides that "the holders of unsecured claims shall be paid the full allowed amount of each such claim, without interest, in six (6) equal semi-annual installments, with first such installment payment payable not more than 180 days after the Effective Date of the Plan." Pursuant to terms in the Amended Plan, the Effective Date of the Amended Plan was February 11, 1994. Accordingly, installment payments as required under paragraph 4.12 of the Amended Plan were due on or before August 10, 1994, February 11, 1995, February 11, 1996, August 10, 1996, and February 11, 1997.

In their motion to modify amended plan of reorganization, the Potts asserted that because of cash flow problems they have been unable to make timely payments on the unsecured claims as provided in paragraph 4.12 of the Amended Plan. Motion to modify amended plan of reorganization, ¶ 5. The Potts maintained that they had made sub-stantial payments on more than ten secured and priority claims pursuant to terms in their Amended Plan. Id. These payments have amounted to more than $8,000 per month since the confirmation of the Potts' Amended Plan. Id. Because of the financial difficulties the Potts have incurred in attempting to satisfy the terms of their Amended Plan, they have requested that this court pursuant to 11 U.S.C. § 1127(b) allow them to amend paragraph 4.12 of their Amended Plan. Id. at 8. The modified provision of the Amended Plan would read as follows:

> 4.12 Class 12—The holders of unsecured claims shall be paid the full amount of each such claim, without interest, in twenty (20) equal monthly installments, with first such installment payment payable on or before July 10, 1995 and payable in consecutive monthly installments thereafter with last such monthly installment payment due and payable on or before February 11, 1997.

Id. at 6. The Potts asserted that the proposed modification was fair and reasonable in that not only does the modification continue to provide for 100% payment to the holders of Class 12 unsecured claims, but it further provides that the holders of the unsecured claims would receive monthly installments with the last such monthly installment due on the same date as the last semi-annual installment which is currently payable under paragraph 4.12 of the Amended Plan as confirmed. Id. at 7.

On May 22, 1995, the Pogoda Group filed an objection to the motion to modify amended plan of reorganization. On July 13, 1995, the court held a hearing on the motion to modify amended plan of reorganization, after which it took the matter under advisement.

### Discussion

■ The court must initially address the Potts' motion to modify amended plan of reorganization, before even considering the Pogoda Group's motion to compel compliance. Section 1127(b) of the Bankruptcy Code deals with when a confirmed plan of reorganization may be amended. 11 U.S.C. § 1127(b) provides that:

> The proponent of a plan or the reorganized debtor may modify such plan at any time

after confirmation of such plan and before substantial consummation of such plan,. . . .

11 U.S.C.S. § 1127(b) (Callaghan 1995).

11 U.S.C. § 1101(2) defines "substantial consummation" as follows:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C.S. § 1101(2) (Callaghan). Substantial consummation is met only upon the satisfaction of all three requirements. *Federal Land Bank of Louisville v. Gene Dunavant and Son Dairy (In re Gene Dunavant and Son Dairy)*, 75 B.R. 328, 331–32 (M.D.Tenn. 1987); *In re H & L Developers, Inc.*, 178 B.R. 77, 80 (Bankr.E.D.Pa.1994); *In re Scotland Guard Servs., Inc.*, 139 B.R. 264, 265 (Bankr.D.P.R.1991). Whether or not a plan has been substantially consummated is a question of fact to be determined by the bankruptcy court on a case by case basis. *In re Stevenson*, 148 B.R. 592, 596 (D.Idaho 1992); *In re Jorgensen*, 66 B.R. 104, 106 (9th Cir. BAP 1986). The burden of proof is on the proponent of the modification to prove that the plan has not obtained substantial modification. *H & L Developers, Inc.*, 178 B.R. at 80; *In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr.S.D.Cal.1993); *In re Modern Steel Treating Co.*, 130 B.R. 60, 64 (Bankr.N.D.Ill.1991), *aff'd*, 1992 WL 82966, 1992 U.S.Dist. LEXIS 5188 (N.D.Ill. Mar. 31 1992).

The case law considering the interpretation of "substantial consummation" as defined in § 1101(2) and used in § 1127(b) is limited. Furthermore, the phrase "all or substantially all" as defined in subsection (A) of § 1101(2) has been given less attention. Two distinct schools of thought have emerged in interpreting the meaning of subsection (A) of § 1101(2). One school of thought employs a rough percentage of payment test, which considers the distributions made to creditors along with transfers of property proposed to be transferred, requiring more than a mere preponderance of both distributions and transfers before "substantial consummation" occurs. *Antiquities of Nevada, Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nevada, Inc.)*, 173 B.R. 926, 929 (9th Cir. BAP 1994), *citing In re Heatron, Inc.*, 34 B.R. 526 (Bankr.W.D.Mo.1983). In *Heatron*, the leading case adhering to this view, fifty-three percent of the payments due under the debtors' confirmed plan of reorganization had been transferred to creditors. The court noted that subsections (B) and (C) of § 1101(2) had been satisfied, leaving the sole question before the court of whether "substantially all of the property of the proposed plan has been transferred." *Heatron*, 34 B.R. at 527. The court concluded, "The word 'substantial' suggests more than halfway, more than a preponderance. When used with the word 'all,' . . . there is a suggestion of completeness." *Id.* at 529. In light of these definitions, the court held that substantial consummation had not occurred because not all or substantially all the property which was to be transferred under the plan had been transferred. *Id.*

Several other courts have criticized the *Heatron* position because it essentially nullifies the specific statutory language of § 1101(2)(C). *United States v. Novak*, 86 B.R. 625, 631 (D.S.D.1988); *In re Burnsbrooke Apts. of Athens, Ltd.*, 151 B.R. 455, 458 (Bankr.S.D.Ohio 1992); *In re Burlingame*, 123 B.R. 409, 412 (Bankr.N.D.Okla. 1991). The key case advocating this position is *In re Hayball Trucking, Inc.*, 67 B.R. 681 (Bankr.E.D.Mich.1986). In *Hayball*, the debtor moved to modify his confirmed amended plan of reorganization, agreeing in his motion to modify that subsection (B) of § 1101(2) had already been satisfied. In his motion to modify, the debtor submitted by way of affidavit that partial payments had been made under the plan to administrative priority creditors, tax priority creditors, and secured creditors. Additionally, the motion to modify indicated that priority fringe benefit creditors had been paid in full. Accordingly, the court concluded that the debtor had commenced distribution within the

meaning of subsection (C) of § 1101(2). *Hayball*, 67 B.R. at 682. Thus, the only remaining issue left for the court to decide was whether there had been a transfer of all or substantially all of the property proposed by the plan to be transferred. *Id.*

The debtor argued that significantly less than half the property proposed in the plan to be transferred to the creditors had been transferred. As support for his position that "substantially all" of the property had not been transferred to his creditors, the debtor relied on *Heatron* and its rationale. In rejecting the view espoused in *Heatron*, the court concluded:

> The difficulty with the analysis in *Heatron* is that it makes a nullity of subsection (C). If subsection (A), relating to the transfer of all or substantially all of the property proposed by the plan to be transferred, is interpreted to include distributions to creditors proposed by the plan to be made over a period of time, then the requirement of subsection (C) will always be met when the requirement of subsection (A) are met. If that was the intent of setting forth this definition, then there would have been no need to include a separate requirement for commencement of distribution under the plan. It is a common axiom that a statute should be construed to give meaning to all of its provisions, if possible. (Citations omitted.)

> .     .     .     .     .

Although the statutory definition of "substantial consummation" is not entirely clear, the Court concludes that distribution to creditors over a period of time are not the types of transfers of property proposed by the plan to be transferred contemplated in subsection (A). In order to give effect to the provision requiring only commencement of such distributions, it must be concluded that the property transfers contemplated in subsection (A) include other types of transfers such as are often contemplated on or shortly after the effective date of a confirmed plan. Such transfers might include the transfer of a security interest to unsecured creditors, as occurred here, a transfer of stock to creditors or third parties, a transfer of promis-

sory notes to creditors, transfers of property to secured creditors in satisfaction of their claims, or transfers of property by third parties to the debtor.

Thus, subsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed undertaken to shape the new financial structure of the debtor and distributions of dividends to creditors made over a period of time from operating revenues. "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter.

*Hayball*, 67 B.R. 684.

■ The courts primary function in construing legislation is to effectuate the legislative intent of the statute. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). However, where the statute on its face does not conclusively reveal the legislative intent, the court must look beyond the literal meaning, analyzing the provisions of the statute as a whole. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 35, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974). Finally, all parts of the statute should be given effect, with the court ignoring the construction of one portion or provision of the statute which would render another part of the statute redundant or superfluous. *Novak*, 86 B.R. at 630–31. *See also Jarecki v. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582–83, 6 L.Ed.2d 859 (1961).

■ After consideration of the guidelines discussed above the court is inclined to adopt the *Hayball* rationale. Should the court have adopted the lump sum payment position as discussed in *Heatron*, it would be disregarding the importance of the independent provisions contained in § 1101(2). *H & L Developers, Inc.*, 178 B.R. at 81. The Potts indicate in their confirmed Amended Plan that they intend to fund their Amended Plan from future income generated through the operation of "the debtor's mobile home parks, lot rentals, mobile home sales, and sales of real estate." Amended Plan, Art.

VII. The Amended Plan further provided that upon confirmation, "the debtors will be revested with all their assets, subject only to outstanding liens as provided in this Plan, and shall be entitled to manage their affairs without further order of the bankruptcy court." Id. The court notes that if it were to find that all or substantially all of the Potts' property needed to be sold or turned over to the creditors to satisfy subsection (A), it would render meaningless subsection (C) which finds substantial consummation upon the commencement of distribution to the creditors. *H & L Developers, Inc.*, 178 B.R. at 81. Therefore, in adopting the position taken in *Hayball* the court concludes that subsection (A) of § 1101(2) has been satisfied.

■ The second element of § 1101(2), the assumption of business or the management of all or substantially all the property dealt with by the plan, is clearly satisfied. As mentioned above, the Potts' Amended Plan provides that upon confirmation "the debtors shall be revested with all of their assets, subject only to outstanding liens as provided in this Plan, and shall be entitled to manage their affairs without further order of the Bankruptcy Court." Amended Plan, Art. VII. Furthermore, nothing in the Potts' motion to modify amended plan of reorganization suggests that the Potts have been unable to use their assets in satisfying obligations to their creditors.

■ Finally, it is evident that the third requirement of § 1101(2) has been satisfied, in that, distribution under the plan has commenced. In fact, in paragraph 5 of their motion to modify amended plan of reorganization, the Potts indicate that they have made "substantial ongoing payments on more than ten secured and priority claims pursuant to said confirmed Amended Plan, which said payments have amounted to more than $8,000 per month since the confirmation of [the debtors] Amended Plan herein."

Accordingly, having found that the Potts' Confirmed Amended Plan is substantially consummated pursuant to § 1101(2), a modification will not be permitted under § 1127(b).

■ The court next must address the Pogoda Group's motion to compel compliance. In its motion, the Pogoda Group asserts that because the Potts have committed a material default in respect to their plan of reorganization, their Amended Plan must be dismissed. Specifically, the Pogoda Group maintains that the Potts violated paragraph 4.12 of their Amended Plan by failing to make two semi-annual payments due to the Pogoda Group.

■ Section 1112(b) of the Bankruptcy Code provides that a court may either "for cause" convert a chapter 11 case to a chapter 7 liquidation case, or dismiss the case, whichever is in the best interests of the creditors of the estate. "What constitutes 'cause' for a conversion or dismissal of a chapter 11 case under section 1112(b) is subject to judicial discretion under the particular circumstances of each case." *In re Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D.Tenn.1992). *See also In re Winslow*, 123 B.R. 641 (D.Colo.1991), *aff'd* 949 F.2d 401 (10th Cir.1991).

Section 1112(b) offers ten illustrations detailing when a court may dismiss or convert a case for cause. The provision of relevance to this case is contained in subsection (b)(8) which provides in pertinent part:

> [A]fter notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, for cause, including—
>
> > (8) material default by the debtor with respect to the confirmed plan; . . . .

11 U.S.C.S. § 1112(b)(8) (Callaghan 1995).

■ In light of the fact that the Potts have apparently failed to make their required payments to the Pogoda Group, as well as the other unsecured creditors provided for in paragraph 4.12 of their Amended Plan, the court concludes that it would be in the best interests of the creditors at this stage to dismiss this case. Additionally, in dismissing this case, the court notes that while the order confirming the Potts' Amended Plan entered on January 31, 1994, did discharge the Potts of their pre-confirmation debts, the order

also created a new relationship between the Potts and their creditors. As a general proposition the confirmed plan of reorganization is binding on the debtors as well as other proponents of the plan. *Garsal Realty, Inc. v. Troy Savings Bank (In re Garsal Realty, Inc.),* 39 B.R. 991, 994 (N.D.N.Y. 1984), *aff'd mem.,* 755 F.2d 913 (2d Cir.1985). The Potts' Amended Plan became a contract between the Potts and their creditors. In exchange for the discharge of their pre-petition debt, the Potts took on the obligation of paying their creditors pursuant to terms contained in the Amended Plan. "Following confirmation, the bankruptcy court retains jurisdiction for limited purposes. Following dismissal, the bankruptcy court has no further jurisdiction and creditors are free to enforce their plan-created contractual rights in the appropriate state court forum." *In re Page,* 118 B.R. 456, 460 (N.D.Tex.1990). It is

SO ORDERED.