FILED
United States Court of Appeals
Tenth Circuit

September 8, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re: CENTRIX FINANCIAL LLC,

Debtor.

------------------------------

ROBERT E. SUTTON; 6762 S.
POTOMAC LLC; CENTRIX
CONSOLIDATED, LLC,

Appellants,

v.

JEFFREY A. WEINMAN, as Trustee
to the Centrix Liquidating Trust,

Appellee.

No. 10-1057
(D.C. No. 1:08-CV-01130-PAB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TACHA, HOLLOWAY**, and **ANDERSON**, Circuit Judges.

_____

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Robert E. Sutton (Sutton), 6762 S. Potomac LLC (Potomac), and Centrix Consolidated, LLC (collectively Appellants), appealed interlocutory and final orders of the bankruptcy court in this proceeding. The district court dismissed their appeal as equitably moot. Exercising our jurisdiction pursuant to 28 U.S.C. § 158(d)(1), we affirm.

*I.*

In this matter the bankruptcy court jointly administered Chapter 11 proceedings filed in September 2006, involving Centrix Financial LLC and numerous other affiliated companies (collectively the Debtors). Appellants were constituents of the Debtors' businesses, which related to underwriting and servicing sub-prime automobile loans. Substantially all of the Debtors' assets were sold to a third party in February 2007. On May 16, 2008, over Sutton's and Potomac's objections, the bankruptcy court confirmed the liquidating Chapter 11 plan (Plan) proposed by the Debtors and the Creditors' Committee.

The Plan consolidated the remaining liabilities and properties of the various Debtors' estates, extinguishing their separate legal existence and deeming the Debtor entities dissolved. All of the Debtors' assets and property were transferred to the Centrix Liquidating Trust (Trust) and Jeffrey A. Weinman was appointed as Trustee. The Plan called for payment of administrative, priority, and secured claims from the cash assets of the Trust. It provided that claims against Sutton and other non-debtor insiders were critical assets of the Debtors' estates

-2-

and were likely the key source of any meaningful recovery by unsecured creditors.  The Trustee was authorized to commence adversary proceedings to enforce the Debtors' claims.

Appellants filed a timely appeal of the bankruptcy court's orders to the district court, challenging pre-confirmation orders that (1) denied Sutton and Potomac leave to conduct examinations under Fed. R. Bankr. P. 2004, (2) approved the disclosure statement over Sutton's and Potomac's objections, (3) enjoined Sutton and Potomac from filing claims objections, and (4) estimated Sutton's and Potomac's administrative claims at zero.  They also appealed the bankruptcy court's order confirming the Plan over Sutton's and Potomac's objections.  Appellants did not seek to stay consummation of the Plan pending their appeal.

The Trustee moved to dismiss the appeal.  He argued that, following substantial consummation of the Plan, the relief Appellants sought was impractical and inequitable in light of the changed circumstances following confirmation.  Thus, he asked the district court to dismiss the appeal as "equitably moot."  The court granted the Trustee's motion and dismissed the appeal on June 10, 2009.  Appellants appealed the dismissal to this court.  While their appeal was pending, we issued an opinion in another case formally adopting the equitable mootness doctrine and setting forth the factors to be considered in applying it.  *See Search Market Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d

-3-

1327, 1337, 1339 (10th Cir. 2009). Therefore, we reversed the district court's decision and remanded to allow that court to apply the relevant factors in the first instance. On remand the district court considered the Trustee's motion in light of our decision in *Search Market Direct* and once again dismissed Appellants' appeal as equitably moot.

## II.

We review a district court's determination of equitable mootness for an abuse of discretion. *Id.* at 1335. "An abuse of discretion occurs when the district court's decision is arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment." *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994) (quotations omitted). In applying the abuse-of-discretion standard, the question is not whether this court would have reached a different determination on the facts presented. *See United States v. Burgess*, 576 F.3d 1078, 1100 (10th Cir.), *cert. denied*, 130 S. Ct. 1028 (2009); *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir. 1991) (reviewing court does not second-guess district court's determination absent abuse of discretion). "Under the abuse of discretion standard[] a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 1504 (quotation omitted). "We will not challenge [the district court's] evaluation unless it finds no support in the record, deviates from

-4-

the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record." *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994). Despite our explicit adoption of the abuse-of-discretion standard of review for equitable mootness determinations in *Search Market Direct*, Appellants do not acknowledge or apply that standard in their appellate briefs.

## III.

In *Search Market Direct* we set forth a six-part test for determining whether an appeal is equitably moot.

> It seems that under the doctrine of equitable mootness a court should decline to hear an appeal of a bankruptcy court's decision where the answers to the following six questions indicate that reaching the merits would be unfair or impracticable: (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely on bankruptcy court decisions—be undermined by reversal of the plan? (5) If appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor? And (6) based upon a quick look at the merits of appellant's challenge to the plan, is appellant's challenge legally meritorious or equitably compelling?

584 F.3d at 1339. We cautioned that "[t]hese six factors are not necessarily conclusive, nor will each factor always merit equal weight." *Id*. Appellants

argue the district court misapplied each of these factors.  We address their

arguments in turn, mindful of our abuse-of-discretion standard of review.[1]

### A.

The first consideration relevant to equitable mootness "involves two

questions:  (1) Did the party seeking reversal try to obtain a stay?  (2) Assuming

the party seeking reversal sought a stay, was that party successful in obtaining a

stay pending appeal?"  *Id.* at 1340.  In *Search Market Direct*, we emphasized that

"both of these questions are significant" because "an appellant's complete and

unjustified failure to seek a stay will often make it unfair for the court to grant

relief–especially if that relief may affect third parties."  *Id.* at 1340, 1341.  "Thus,

we will not only look to whether a stay has been obtained; we will also inquire

into whether the appellant has sought a stay pending appeal."  *Id.* at 1341.  Based

on Appellants' failure to even seek a stay, the district court concluded this factor

weighed in favor of equitable mootness.

Appellants first contend that failure to obtain a stay is immaterial to a

determination whether an appeal is equitably moot.  This argument ignores our

---

[1]     Appellants once again argue that the district court could entertain their appeal by immunizing post-confirmation transactions consummated in reliance on the confirmed Plan.  They characterize this as a question independent of the equitable mootness analysis.  But as we indicated in our decision in their previous appeal, *see Sutton v. Weinman*, 355 F. App'x 199, 201 n.1 (10th Cir. 2009) (unpublished), this issue is appropriately addressed in the context of whether the relief requested in the appeal would affect the rights of innocent third parties not before the court.

holding in *Search Market Direct* that a court should consider both a party's attempts to secure a stay and whether those attempts were successful. *See id.* at 1340-41. Appellants argue alternatively that their failure to seek a stay was justified because they lacked funds to post a supersedeas bond, such that any attempt to obtain a stay would have been futile. But they fail to show that the district court's contrary determination was an abuse of discretion. The district court reasoned they could have sought to post a bond in a lesser amount, based on their lack of assets and the contingent nature of the claims against third parties under the Plan. Therefore, the court determined that Appellants' failure to seek a stay was not justified. Appellants have not shown that the district court's reasoning was arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment. We conclude the district court did not abuse its discretion in weighing this first factor in favor of equitable mootness.

### B.

The second question asks whether the Plan has been substantially consummated. "We have adopted the 'substantial consummation' yardstick because it informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Id.* at 1341 (quotation omitted). In determining whether a plan has been substantially consummated, we apply the Bankruptcy Code's three-part definition:

"substantial consummation" means–

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;

> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2); *see Search Market Direct*, 584 F.3d at 1341-42.

The district court considered the consummation activities that had occurred since confirmation of the Plan on May 16, 2008. The Debtors had transferred all assets to the Trust, and the Debtor entities had been dissolved pursuant to the terms of the Plan. The Trustee had commenced forty-two adversary proceedings against third parties. As the district court observed, these claims constituted the principal assets of the bankruptcy estate. Of the cases filed, over half had been settled as of the date of the court's decision on February 12, 2010, resulting in recoveries to the Trust of almost $500,000. The Trustee had obtained default judgments in several more actions valued at approximately $263,000. In addition, the Trustee had entered into a consent judgment with the State of Colorado to settle a claim the State originally brought against Centrix Financial LLC. The amount of the consent judgment is over $92 million, although the State agreed to treat only $5 million as a general unsecured claim. Finally, by February 2010, the Trustee had paid administrative claims and made other disbursements totaling

approximately $418,000. Applying the definition in § 1101(2), the district court concluded the Plan had been substantially consummated.

Appellants' initial contention—that substantial consummation is not relevant to determining whether an appeal is equitably moot—is again contradicted by our decision in *Search Market Direct*. *See* 584 F.3d at 1341-42. Alternatively, they claim the district court erred in concluding the Plan was substantially consummated. They assert that, in comparison to administrative and unsecured claims aggregating in the hundreds of millions of dollars under the Plan, there has been very little consummation activity. They argue a plan cannot be substantially consummated until a significant majority of the payments under the plan have been completed. They appear to base this contention on their interpretation of § 1101(2)(A), which requires "transfer of all or substantially all of the property proposed by the plan to be transferred." *See In re Heatron, Inc.*, 34 B.R. 526, 527, 529 (Bankr. W.D. Mo. 1983) (construing § 1101(2)(A) to require completion of substantially all payments to creditors before plan substantially consummated).

As the district court noted, however, Appellants' construction of § 1101(2)(A) as requiring completion of substantially all payments to creditors would render meaningless § 1101(2)(C), which requires only that distributions under the plan be commenced. Appellants' construction has been rejected by a majority of courts to consider the issue, beginning with *In re Hayball Trucking,*

*Inc.*, 67 B.R. 681 (Bankr. E.D. Mich. 1986). *Hayball Trucking* reasoned that, in order to give effect to subsection (C), "distributions to creditors over a period of time are not the types of transfers of property . . . contemplated in subsection (A)." *Id.* at 684. Instead, the court concluded:

> [S]ubsections (A) and (C) appear to distinguish between transfers of property to or from the debtor at or near the time the plan is confirmed[,] undertaken to shape the new financial structure of the debtor[,] and distributions of dividends to creditors made over a period of time from operating revenues. "Substantial consummation" requires completion or near completion of the former, but only commencement of the latter.

*Id.*; *see also, e.g., Antiquities of Nev., Inc. v. Bala Cynwyd Corp. (In re Antiquities of Nev., Inc.)*, 173 B.R. 926, 929-930 (B.A.P. 9th Cir. 1994) (following *Hayball Trucking*); *In re Potts*, 188 B.R. 575, 580-81 (Bankr. N.D. Ind. 1995) (same); *In re H & L Developers, Inc.*, 178 B.R. 77, 80-81 (Bankr. E.D. Pa. 1994) (same); *In re Burlingame*, 123 B.R. 409, 411-12 (Bankr. N.D. Okla. 1991) (same). We agree with the well-reasoned majority rationale and therefore reject Appellants' contention that the district court erred in concluding the Plan has been substantially consummated, as that standard is defined in § 1101(2)(A)-(C).

We agree with Appellants, however, that substantial consummation is not dispositive. *See Search Market Direct*, 584 F.3d at 1342. Nor did the district court treat it as such. Appellants point to our discussion in *Search Market Direct* of "concerns that motivate courts not to decide the merits of an appeal of a

substantially consummated bankruptcy plan." *Id.* Because the district court discussed similar issues in its analyses of the other factors relevant to a determination of equitable mootness, we will likewise address them in the context of our review of the district court's application of the remaining factors.

*C.*

The third factor requires the court to consider the effects that reversal of a plan will have on innocent third parties. This "is probably the foremost concern in our analysis of equitable mootness." *Id.* at 1343. Appellants do not challenge the district court's determination that their appeal seeks a complete reversal of the Plan, such that creditors would be required to vote upon a new plan. *See In re Long Shot Drilling, Inc.*, 224 B.R. 473, 481 (B.A.P. 10th Cir. 1998) (concluding remand to amend disclosure statement and plan would require creditors to revote). In considering how this relief could adversely affect third parties, the district court focused on (1) the administrative payments already made, (2) the consummated litigation settlements, and (3) the ongoing adversary proceedings.

The court initially concluded that Appellants would be equitably bound by their representation they have no intent to challenge the administrative payments or settlements. *Cf. F.H. Partners, L.P. v. Inv. Co. of the Sw. (In re Inv. Co. of the Sw.)*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006) (considering, with respect to adverse impact of relief sought on appeal, appellant's representation it would not seek return of payments made to third parties). Thus, the district court did not

take into account the possibility of such challenges in weighing the harm to third parties from reversal of the Plan. It stated further that any challenge to the consummated settlements was unlikely to be successful. But the court acknowledged the possibility a new trustee may challenge the administrative payments upon reversal of the Plan. Addressing the ongoing litigation, the court concluded reversal of the Plan would potentially affect third parties, particularly in light of the uncertainty of who would assume control of the cases. The court later expounded on this reasoning, finding that as a result of delay in moving forward with the liquidation, Plan assets consisting primarily of adversary proceedings would likely diminish, to the detriment of the creditors. Appellants advance two arguments of error relating to the district court's analysis of this factor, both of which we reject.

### i.

Appellants contend the Trustee failed to prove that reversal of the Plan will result in injury to third parties. They assert the district court's conclusion that third parties will potentially be harmed is insufficient, under our holding in *Search Market Direct*, to find this factor weighs in favor of equitable mootness. *See* 584 F.3d at 1343-44. We disagree. The district court readily acknowledged its analysis of what would occur upon reversal of the Plan was somewhat speculative, in large part because Appellants claims on appeal did not involve a competing plan. But the facts of this case are different from those in *Search*

-12-

*Market Direct*. In that case two creditors vying for ownership of the debtor's most valuable asset had proposed competing plans, one of which was confirmed. The appellant sought reversal of the confirmed plan in favor of its own plan. *See id.* at 1331-33. The third-party-harm analysis focused on whether the appellee had shown that the appellant had insufficient funds to finance its proposed plan. *See id.* at 1344-47

In contrast, Appellants' appeal issues required a different analysis. Their claims related to alleged error in the bankruptcy court's processes in managing and resolving the case. They sought a complete reversal of the Plan, after which they would pursue Rule 2004 examinations and file their claims objections. If successful on appeal, the zero-estimation of their administrative claims would be reversed as well, and a new disclosure statement and a new plan would require a new vote by creditors. Appellants did not propose an alternative plan. Faced with this uncertainty in the ultimate relief Appellants were seeking, the court theorized that, were their claims successful, they may have greater control over the nature of a new plan, and the amount of the claims against them could ultimately be reduced. The district court also posited it was likely a substantially similar plan would be confirmed, providing for a liquidating trust holding adversary proceedings as its principal assets. Appellants do not take issue with these assumptions. Against this backdrop, the district court considered whether reversal of the Plan would unduly harm third parties not before the court, taking

-13-

pains to identify and dismiss the effects which it concluded were unlikely to occur. On the facts presented in this case, the district court did not abuse its discretion in considering and weighing potential effects on third parties as a result of reversal of the Plan.

*ii.*

Appellants also maintain the district court erred in not "immunizing" all post-confirmation transactions from the effects of reversal of the Plan. They assert this is all the court needed to do to protect third parties from undue harm. And they contend the court could have made such an order binding not only on Appellants, but on all third parties as well. Appellants' argument is based on a theory of standing: they reason that, because Appellants were the only parties with unresolved objections prior to confirmation of the Plan, they alone would have standing to object to transactions entered into under the Plan and they alone could seek to undo them upon reversal.

Appellants' near-singular focus on this issue is misplaced. In assessing the effects of reversal of the Plan on third parties, the district court took into account their disclaimer of any intent to undo payments to and settlements with third parties. And it dismissed, as unlikely to succeed, any undoing of the consummated transactions, with the exception of possible challenges to administrative payments by a new trustee. Appellants do not explain why a new trustee under a new plan, who was neither before the bankruptcy court in order to

-14-

object to the Plan, nor before the district court on appeal, would lack standing to bring such a challenge. None of the cases cited by Appellants supports such a proposition.[2]

Moreover, it is apparent the district court's primary focus, in assessing third-party harm, was the effect of reversal of the Plan upon the ongoing adversary proceedings, which are the principal assets of the liquidating estate and include claims against Sutton. Appellants do not address this portion of the district court's analysis in their opening brief. An opening brief must identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). "Consistent with this requirement, we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir.

---

[2]     We agree with the Trustee that Appellants' cited cases applying 11 U.S.C. § 363(m) and former Bankruptcy Rule 10-801(2) are inapposite. These cases do not address a court's equitable power to immunize transactions with third parties from the effects of reversal of a bankruptcy plan on appeal. Instead, the courts applied statutory or court-rule provisions preserving the validity of certain types of transactions with good faith purchasers absent a stay pending appeal. The courts considered whether, in light of such statutory or court rule provisions, they could nonetheless provide relief on appeal such that the appeal was not moot. *See In re King Res. Co.*, 651 F.2d 1326, 1331-32 (10th Cir. 1980); *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203-04 (10th Cir. 1994); *Golfland Entm't Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 856-57 (10th Cir. 1997). Appellants identify no statute or court rule protecting the validity of the post-confirmation transactions in this case.

2007). "Stated differently, the omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Id.* As Appellants advance no argument of error with respect to this portion of the district court's analysis, we decline to review it on appeal.

### D.

The fourth factor for determining equitable mootness "reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." *Search Market Direct*, 584 F.3d at 1347 (quotation omitted). In *Search Market Direct*, we acknowledged that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed." *Id.* (quotation omitted). And we found it "equally important that a court not reverse a bankruptcy plan if an appellate reversal . . . would create a nightmarish situation for the bankruptcy court on remand and make reconstructive relief extremely improbable." *Id.* (quotations and brackets omitted). But we also considered the seriousness of the appeal allegations as a "countervailing concern[]" that could weigh against a determination of equitable mootness. *Id.*

Appellants' contention that the right to appeal an adverse judgment always outweighs the public-policy interest in finality has no merit. Nor have they

shown the district court abused its discretion in weighing this factor in favor of equitable mootness. Appellants emphasize the district court's finding that reversal of the Plan would not cause a nightmarish situation for the bankruptcy court on remand. The court stated that "[i]n all likelihood, what would happen is that a plan substantially similar to the plan that was approved would come about and would probably come about without a[n] extraordinarily complicated unscrambling of the egg." Aplt. App., Vol. 5 at 923. Thus, Appellants contend the district court was compelled to conclude that their right to appeal outweighed the public-policy interest in finality. But as the district court noted, the absence of a nightmarish situation for the bankruptcy court on remand is "not the only concern." *Id.* In *Search Market Direct* we identified, as a countervailing concern outweighing the public-policy interest in finality, the "troubling allegations" raised in that case "of bad-faith dealings between the debtor, [another creditor], and the trustee, and of a lack of disinterestedness on the part of the trustee." 584 F.3d at 1347. Without expressing any opinion of the merits of these allegations, we concluded "these are serious allegations that should, if possible, receive their due attention." *Id.* Appellants maintain their appeal claims must likewise receive the court's due attention. But the district court concluded Appellants' claims do not involve the same kind of troubling issues:

> The quick look certainly does not indicate, as it did in [*Search Market Direct*], that there was some type of claim of error that would indicate some serious reason that the court would need to consider

-17-

the appeal in order to be able to bring to light some issue that went to the integrity of the bankruptcy process.

Aplt. App., Vol. 5 at 931.[3]  Noting the extent to which the unstayed Plan had "marched forward," and acknowledging that its decision was a "closer call" because of the absence of a nightmarish situation on remand, *id*. at 924, the district court nonetheless concluded that reversal of the Plan "would affect adversely the public policy need for reliance on the confirmed plan," *id.* at 925. Appellants have not established that the district court made a clear error of judgment or exceeded the bounds of permissible choice in weighing the public-policy factor.

### E.

The fifth factor a court should consider in determining whether an appeal is equitably moot is the impact of reversal upon the likelihood of a new, successful reorganization.  The district court first observed that a successful reorganization

---

[3]     Although the district court made this observation in the context of its analysis of the final factor, we believe it is also relevant to the court's consideration of the public-policy factor, in which it referenced the "troubling allegations" involved in *Search Market Direct*.  In that case we likewise considered the seriousness of the appeal allegations in our analyses of both the fourth and sixth factors.  *See* 584 F.3d at 1347, 1348.  And we acknowledged that the analyses under the various factors could be overlapping.  *See id.* at 1348 (noting preceding analysis resolved questions posed by fifth factor).  Regarding the district court's assessment of the sixth factor—taking a quick look at the merits of the issues on appeal—Appellants contend the district court erred in concluding their claims were not equitably compelling.  We will address that argument in reviewing the district court's application of the final factor.

of the Debtors would likely involve a liquidating trust, the principal assets of which would again be the adversary proceedings, including claims against Sutton. The court then considered the impact of reversal of the Plan on the success of such a reorganization, concluding it would necessarily be postponed and therefore plan assets and plan claims would likely diminish, to the detriment of the creditors. Appellants address the crux of the district court's reasoning in a footnote, asserting that even if a new reorganization results in reduced claims against Appellants and smaller distributions to creditors, "that is not a basis for a conclusion that a 'successful' reorganization is not possible. It simply means that a proper application of the statutory criteria may result in a different allocation of reorganization value." Aplt. Opening Br. at 28 n.4. Appellants cite no authority for this proposition.

We conclude the district court did not abuse its discretion in evaluating this factor. A "successful reorganization" is ordinarily "one from which the debtor emerges as an economically viable operation." *Sheet Metal Workers' Int'l Assoc. v. Mile Hi Metal Sys., Inc. (In re Mile Hi Metal Sys., Inc.)*, 899 F.2d 887, 893 (10th Cir. 1990). But this case involves liquidation of the Debtors' assets. Appellants do not dispute the district court's conclusions that a new reorganization would again involve a liquidating trust, or that adversary proceedings would remain the primary assets of such a trust. Nor do they challenge the court's characterization of their appeal as aimed at reducing the

-19-

extent of the claims against them, or its conclusion that Plan assets would likely diminish as a result of delay. In the context of this case, it was neither arbitrary, capricious, nor whimsical for the district court to consider the impact of a reversal of the confirmed Plan on the relative success, in terms of maximizing the creditors' recovery, of a new liquidation plan.

### F.

The final factor in evaluating whether an appeal is equitably moot involves a "quick look at the merits of appellant's challenge to the plan" to determine if it is "legally meritorious or equitably compelling." *Search Market Direct*, 584 F.3d at 1339. In doing so, a court does not thoroughly evaluate and decide the merits of the claims. *See id.* at 1348. The district court reviewed the parties' appeal briefs in this case and concluded one of Appellants' five claims appeared to have some merit, but a quick look at the merits of the other four claims did not shed light on the court's equitable mootness analysis. The court initially declared this sixth factor "a draw in terms of whether or not the challenge is legally meritorious." Aplt. App., Vol. 5 at 931. But the court went on to conclude "that the merits of appellants' challenge to the plan [are] not equitably compelling given the fact that the appellants are . . . the parties against whom many of the claims that constitute the assets of the trust are [brought]." *Id.* And, as noted *infra*, the court distinguished Appellants' claims from those in *Search Market*

*Direct*, which "went to the integrity of the bankruptcy process." *Id.* Thus, the court concluded this factor did not weigh in favor of proceeding with the appeal.

Appellants maintain that one of their claims implicates the abrogation of serious and fundamental rights. They argue the bankruptcy court violated their due process rights by precluding them from filing claims objections. As a result, they assert they are "confronted with an adversary proceeding seeking damages exceeding $100 million without ever being permitted to challenge the damage component of the claims asserted against them." Aplt. Opening Br. at 29 (quotations and emphasis omitted). Appellants also point to the district court's conclusion that one of their other claims appeared to have some merit.

Appellants do not explain how they are prevented from defending against the claims filed against them, including the extent of the damages alleged, in the adversary proceedings. Nor have they shown that the district court abused its discretion in concluding that, unlike the claims at issue in *Search Market Direct*, Appellants' appeal issues do not raise "serious conflicts of interest" or other issues that "go to the very integrity of the bankruptcy process." 584 F.3d at 1348.

## *IV.*

Having concluded the district court did not abuse its discretion in weighing each of the relevant factors, we likewise find no abuse of discretion in its ultimate holding that, based on the overall six-factor test, Appellants' appeal was equitably

moot.  The judgment of the district court is therefore AFFIRMED.  Appellants'

motion for expedited appeal is DENIED as moot.


Entered for the Court


Deanell Reece Tacha
Circuit Judge