**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ABENGOA BIOENERGY BIOMASS
OF KANSAS, LLC,

Debtor.

-----------------------------------------

DRIVETRAIN, LLC, as Liquidating
Trustee for Abengoa Bioenergy US
Holding, LLC,

Appellant,

v.

MARK D. KOZEL, as Liquidating
Trustee of the ABBK Liquidating
Trust,

Appellee.

Nos. 18-3120 and 18-3128

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 6:18-CV-01055-EFM)**

---

David Dunn (Ronald J. Silverman, Hogan Lovells US LLP, New York, New York,
and Mark V. Bossi, Thompson Coburn LLP, St. Louis, Missouri, with him on the
briefs), Hogan Lovells US LLP, New York, New York, for Appellant.

Michael A. VanNiel (Kelly S. Burgan and Adam L. Fletcher with him on the
brief), Baker & Hostetler LLP, Cleveland, Ohio, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

This consolidated bankruptcy appeal arises from transactions related to the construction of an ethanol conversion facility in Hugoton, Kansas. Debtor Abengoa Bioenergy Biomass of Kansas (ABBK), an American subsidiary of the Spanish engineering conglomerate, Abengoa, S.A., financed the construction and operation of this facility through inter-company loans from other American subsidiaries of Abengoa, S.A.

Significant financial difficulties hurt ABBK, as well as many other subsidiaries of Abengoa, S.A. ABBK eventually filed for bankruptcy protection in Kansas. Four other Abengoa subsidiaries filed for bankruptcy protection in Missouri. The ABBK trustee pursued a plan of liquidation, which classified the inter-company loans ABBK had received beneath claims of general unsecured creditors, effectively ensuring no recovery for inter-company creditors.

Acting as liquidating trustee in the Missouri bankruptcy, Drivetrain LLC objected to this plan of liquidation. The bankruptcy court nevertheless confirmed the plan. Drivetrain sought a stay of enforcement and implementation of the plan of liquidation, pending appeal to the district court. But both the bankruptcy court and the district court, on appeal, denied Drivetrain's motion for a stay.

At this juncture, the ABBK trustee began to implement the plan, paying priority claims and distributing settled unsecured claims. After substantially consummating the plan, the ABBK trustee moved to dismiss Drivetrain's appeal of the confirmed plan as equitably moot. The district court granted that motion, citing the potential harm that innocent third-party creditors would face from unwinding the plan at this juncture.

We AFFIRM the district court's decision to dismiss Drivetrain's appeal as equitably moot. The district court did not abuse its discretion in concluding the potential harm to innocent third-party creditors justified this dismissal. We also DISMISS Drivetrain's related appeal from the district court's denial of its motion for a stay of enforcement and implementation for lack of any live controversy.[1]

## I. Background

One of several American subsidiaries among Abengoa, S.A.'s bioenergy group, ABBK oversaw the construction of an ethanol conversion facility in Hugoton, Kansas. Other subsidiaries of Abengoa, S.A. included Abengoa Bioenergy Company, LLC (ABC), Abengoa Bioenergy Engineering & Construction, LLC (ABEC), Abengoa Bioenergy Trading, LLC (ABT), and

---

[1] Because we dismiss for reasons of justiciability, we do not address the parties' arguments on the question whether 28 U.S.C. § 1292(a)(1) would otherwise confer appellate jurisdiction over the denial of a stay of enforcement and implementation of a confirmed plan.

Abengoa Bioenergy Outsourcing, LLC (ABO). These four subsidiaries shared the same directors, officers, and general counsel as ABBK. They likewise shared back-office operations, including accounting, administrative, information technology, legal, and other services.

ABBK frequently conducted business with these subsidiaries, and—after ABBK exhausted its grant funds from the U.S. Department of Energy—they financed the completion of the Hugoton plant with significant loans and logistical support. The most significant example was a $55 million loan from ABC. ABBK only made one payment—without any interest—on this loan. ABT delivered more than $10 million in biomass supplies to ABBK. And both ABEC and ABO provided several million dollars in administrative services. Although ABEC and ABT regularly invoiced ABBK—and ABO secured its own fixed-fee arrangement—no meaningful pre-petition payments appear to have occurred among these entities.

These generous financial arrangements helped ABBK overcome massive cost overruns associated with construction of the Hugoton plant, which eventually achieved substantial completion in late 2014. But operational problems limited ethanol production at the plant, and—although the facility was primarily intended as a demonstration project, rather than a revenue generator—ABBK never saw significant cash flow as a result of its completion. As Abengoa, S.A. began to

experience significant financial difficulties, ABBK faced mounting outside pressure. In March 2016, several creditors filed a petition for involuntary bankruptcy against ABBK pursuant to Chapter 7 of the Bankruptcy Code. ABBK eventually converted this proceeding into a voluntary petition for reorganization pursuant to Chapter 11. During this same timeframe, ABC, ABEC, ABO, and ABT filed for bankruptcy protection in a consolidated proceeding in Missouri.

Although ABBK had sought to transfer venue for its bankruptcy from Kansas to a related consolidated proceeding in Delaware, the bankruptcy court denied that motion. Accordingly, in November 2016—with an eye toward satisfying its creditors—ABBK auctioned the Hugoton facility for nearly $50 million. After resolving priority expenses, the ABBK trustee pursued a plan of liquidation that made distributions first to secured creditors and other lienholders; then to general unsecured creditors; and, finally, to inter-company claims from the other Abengoa subsidiaries. In effect, this plan subordinated all inter-company claims—nearly $70 million in loans—such that inter-company creditors would see no recovery.[2]

Drivetrain objected to this plan and proposed a competing plan, which sought to place inter-company claims on par with all claims filed by general

_____

[2] In both the Delaware and Missouri bankruptcies, the courts also confirmed plans that treated inter-company claims in a similar fashion.

unsecured creditors. But the bankruptcy court confirmed the ABBK trustee's plan over Drivetrain's objection. After the plan was confirmed, Drivetrain sought to stay its enforcement and implementation, pending appeal to the district court. The bankruptcy court denied this motion, concluding that Drivetrain had failed to demonstrate it was likely to succeed in overturning the confirmed plan. Drivetrain appealed the stay denial to the district court, which likewise concluded the equities favored implementation of the plan of liquidation. Drivetrain sought to appeal the district court's denial of a stay on an expedited basis, but we denied expedited briefing on account of a potential jurisdictional defect.

In the meantime, the ABBK trustee had begun to implement the plan of liquidation. After substantially consummating the plan by distributing most of the estate's assets, the ABBK trustee moved before the district court to dismiss Drivetrain's appeal of the plan confirmation as equitably moot. The district court eventually granted that motion, concluding a successful appeal of the plan confirmation could harm innocent third-party creditors. Drivetrain also appeals from that decision. Because we had yet to consider the merits of Drivetrain's appeal from the denial of the stay, we consolidated both matters.

## II. Analysis

Drivetrain contends the district court erred as a matter of law in applying the doctrine of equitable mootness to a Chapter 11 cash-only liquidation.

Drivetrain also argues the district court abused its discretion in dismissing as equitably moot its appeal from the confirmation of the plan of liquidation. As we explain, the district court did not err in its application of the equitable-mootness doctrine to the circumstances of this case.

We review the district court's determination of equitable mootness for abuse of discretion. *Search Market Direct, Inc. v. Paige (In re Paige)*, 584 F.3d 1327, 1335 (10th Cir. 2009).[3] A district court abuses its discretion only when that court "bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065 (10th Cir. 2001) (quoting *Hawkins v. City and Cty. of Denver*, 170 F.3d 1281, 1292 (10th Cir. 1999)).

In applying the abuse-of-discretion standard to determinations of equitable mootness, "the question is not whether this court would have reached a different determination on the facts presented." *Sutton v. Weinman (In re Centrix Fin.*

---

[3] Drivetrain contends the threshold *applicability* of equitable mootness to a cash-only liquidation—as distinct from the district court's *application* of the equitable-mootness inquiry in this instance—presents a pure question of law, such that we should engage in *de novo* review. Whatever the merits of this argument, the six-factor inquiry we adopted in *Paige*—which explicitly weighs the costs created by ongoing litigation against the benefits provided by a successful reorganization—offers ample opportunity to evaluate the propriety of equitable mootness within the context of a cash-only liquidation. *See Paige*, 584 F.3d at 1348. In any event, the standard of review does not affect our disposition of the case.

*LLC)*, 394 F. App'x 485, 486 (10th Cir. 2010).  Indeed, we will disturb the decision of the district court only to the extent that "it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record."  *Id*. at 487.

### A.  *Equitable Mootness*

Equitable mootness is a judicially-created doctrine of abstention that permits the dismissal of bankruptcy appeals where confirmed plans have been substantially completed and reversal would prove inequitable or impracticable. *E.g.*, *Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 968 (9th Cir. 2016) ("Equitable mootness concerns whether changes to the *status quo* following the order being appealed make it impractical or inequitable to unscramble the eggs.").

Although the text of the Bankruptcy Code makes no mention of equitable mootness, courts have invoked this abstention doctrine on account of the practical concern that appeals from already-confirmed plans of reorganization might disrupt the confirmed plan or otherwise harm the interests of third parties who have justifiably relied upon plan confirmation.  *E.g.*, *In re Tribune Media Co.*, 799 F.3d 272, 277–78 (3d Cir. 2015) (Ambro, J.).  Every circuit has adopted some variation of the equitable-mootness doctrine, and we did so a decade ago in

*Paige.  See also* 7 *Collier on Bankruptcy* ¶ 1129.09 n.6 (16th ed. 2020) (observing that "the equitable mootness doctrine is embraced in every circuit").

As we observed in *Paige*, courts should decline to consider appeals from decisions rendered by the bankruptcy court when doing so would prove either inequitable or impracticable.  584 F.3d at 1339.  This accords with the commonsense understanding that—upon substantial consummation of a plan, either through conventional reorganization or disposition of the assets of the estate—courts must examine whether the "relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation."  *Samson Energy Res. Co. v. Semcrude, L.P. (In re Semcrude, L.P.)*, 728 F.3d 314, 321 (3d Cir. 2013) (Ambro, J.).

Our decision in *Paige* instructs that we assess the propriety of dismissal premised on equitable mootness around six overlapping inquiries.  (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely upon decisions of the bankruptcy court—be undermined by reversal of the plan? (5) If the appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor?

And (6) based upon a quick look at the merits of the appellant's challenge to the plan, is it legally meritorious or equitably compelling? *Paige*, 584 F.3d at 1339.[4]

Although this assessment must be holistic, the third question—what effects reversal would impose on third-party creditors—represents our "foremost concern." *Id*. at 1343. Other courts have likewise emphasized the significance of this inquiry, as well as the related question of substantial consummation of the confirmed plan. *See, e.g.*, *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 542 F.3d 131, 136 (5th Cir. 2008). Different courts have afforded disparate significance to roughly comparable underlying inquiries, but many prioritize effects to non-party creditors, substantial consummation, and, sometimes, the appellant's success in obtaining a stay pending appeal to the exclusion of other questions. *See Paige*, 584 F.3d at 1338–39 (collecting cases); *see also* Bruce A. Markell, The Needs of the Many: Equitable Mootness' Pernicious Effects, 93 Am. Bankr. L.J. 377, 393–96 (2019) (addressing differences between circuits).

\* \* \*

Notwithstanding its widespread adoption, the equitable-mootness doctrine is not without judicial and academic critics. *See, e.g.*, *In re One2One Commc'ns,*

---

[4] We have likewise emphasized that the party seeking to prevent the court from reaching the merits of an appeal from plan confirmation must bear the burden of persuasion in demonstrating that we should abstain from our ordinary practice of hearing and resolving cases. *Paige*, 584 F.3d at 1339–40.

*LLC*, 805 F.3d 428, 439 (3d Cir. 2015) (Krause, J., concurring) ("So what is the constitutional or statutory anchor for declining to exercise jurisdiction over bankruptcy appeals dubbed 'equitably moot?' Simply put, there is none."). These critics argue the doctrine undercuts the principles of ordinary appellate jurisdiction, creates an inequitable burden on the right to appeal, dilutes sources for interpretation of the Bankruptcy Code, and facilitates undue deference by Article III courts to those courts not entrusted with the judicial power of the United States. *See, e.g.*, Markell, *supra*, at 397–413. *But see Tribune Media*, 799 F.3d at 286–88 (Ambro, J., concurring) (articulating the statutory and jurisdictional bases for equitable mootness). As the Supreme Court has yet to weigh in on this important legal debate, we continue to apply *Paige* as our binding precedent.

### B. Equitable Mootness as Applied to a Chapter 11 Liquidation

Before turning to the application of the equitable-mootness doctrine in this appeal, we first consider Drivetrain's threshold argument that courts may not—as a matter of law—invoke equitable mootness where a "reorganization" in form nonetheless functions as a liquidation. Drivetrain asks that we erect a categorical bar to determinations of equitable mootness under such circumstances because a liquidation will necessarily *not* implicate most of the concerns that motivate our equitable-mootness inquiry.

We see no reason to treat a plan of liquidation pursued under Chapter 11 any differently than a more conventional plan of reorganization. Moreover, the flexible inquiry we articulated in *Paige* affords ample consideration to the concerns raised by Drivetrain. To varying degrees, the third (effect on innocent third parties), fourth (public-policy needs), and—most especially—fifth (impact on reorganization) inquiries permit courts to consider the specific attributes of a confirmed plan of liquidation. *See* 584 F.3d at 1338–39.

We note, as well, that other circuits have affirmed determinations of equitable mootness within the context of liquidations pursuant to Chapter 11. *See, e.g.*, *Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 772 F.3d 102, 107–09 (2d Cir. 2014) (expressly approving the application of the equitable-mootness doctrine to an appeal from a plan of liquidation pursuant to Chapter 11); *see also Schaefer v. Superior Offshore Int'l, Inc. (In re Superior Offshore Int'l, Inc.)*, 591 F.3d 350, 353–54 (5th Cir. 2009) (applying the equitable-mootness inquiry to a plan of liquidation pursuant to Chapter 11). And we have likewise affirmed a district court's determination of equitable mootness in the case of a Chapter 11 cash-only liquidation. *Sutton v. Weinman (In re Centrix Fin. LLC)*, 394 F. App'x 485, 494 (10th Cir. 2010).

In short, we reject Drivetrain's invitation to erect a categorical bar to equitable mootness in the context of a Chapter 11 liquidation. We accordingly turn to the equitable-mootness inquiry we outlined in *Paige*.

## C. Equitable Mootness as Applied to this Case

Drivetrain contends the district court abused its discretion in determining the multi-factor inquiry set forth in *Paige* militated in favor of dismissal. We review each factor in turn and conclude the district court did not abuse its discretion in dismissing Drivetrain's appeal of the confirmed plan of liquidation as equitably moot.[5]

---

[5] This table summarizes both the district court's conclusions and our analysis of the six equitable-mootness factors identified in *Paige*:

|  | District Court | Tenth Circuit |
| --- | --- | --- |
| **Stay Pending Appeal** | Neutral | Against |
| **Substantial Consummation** | Favors | Favors |
| **Innocent Third Parties** | Strongly Favors | Strongly Favors |
| **Public-Policy Needs** | Favors | Favors |
| **Impact on Reorganization** | Against | Against |
| **Quick Look at Merits** | Favors | Favors |

*1. Stay Pending Appeal*

We begin by asking whether: (1) the party seeking reversal sought to obtain a stay; and (2) these efforts met with success. *Paige*, 584 F.3d at 1340. Different courts have placed different emphases on these questions, which we have acknowledged "will also generally be dispositive of other relevant factors" to the extent reorganization or liquidation has taken place. *Id*. at 1340–41. Our precedent seeks "to accommodate" parties who have "diligently" pursued a stay without success. *Id*. at 1341. Because Drivetrain appealed the bankruptcy court's denial of a stay, the district court concluded this factor militated neither in favor nor against a determination of equitable mootness.

As both parties acknowledge, Drivetrain has sought diligently to protect its appellate rights by pursuing a stay from both the bankruptcy and district courts. Drivetrain also appealed the district court's denial of a stay to this court and asked that we expedite briefing. The only additional step that Drivetrain could have taken would have been to seek a stay of the district court's denial of a stay directly from this court. It is true that none of Drivetrain's efforts met with success, but we remain mindful of *Paige*'s observation that we should seek to "accommodate an appellant who has diligently but unsuccessfully pursued a stay pending appeal" to the extent possible. *See id*. Although Drivetrain could have

sought a stay of the district court's denial of a stay directly from this court, we cannot reasonably conclude these efforts lacked diligence.

We accordingly conclude this factor militates against a determination of equitable mootness.

### 2. *Substantial Consummation*

We next ask whether the relevant stakeholders have "substantially consummated" the confirmed plan. *Id*. at 1341. Although not dispositive of mootness alone, this "yardstick . . . informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Id*.

The Bankruptcy Code defines "substantial consummation" as: (1) the transfer of all or substantially all of the property proposed by the plan to be transferred; (2) the assumption by the debtor or by the successor to the debtor under the plan of the business or the management of all or substantially all of the property dealt with by the plan; and (3) the commencement of distribution under the plan. 11 U.S.C. § 1101(2).

Because the parties acknowledge substantial consummation has transpired, the district court focused primarily on what, if any, weight to afford this factor. Drivetrain argued that cash-only distributions do not implicate the values of

finality and reliance that typically underscore determinations of equitable mootness. The district court rejected this argument, concluding substantial consummation militated in favor of its determination of equitable mootness.

We conclude the district court appropriately found that the plan of liquidation implicated multiple transactions that could not be unwound without substantial cost and delay. These include: millions of dollars in distributions and payments to more than 100 creditors, administrative and priority claimants, and others; formal settlements with several unsecured creditors, whose asserted claims exceeded $10 million; and the withdrawal, with prejudice, of millions of dollars in inter-company claims that ABBK had asserted in the Missouri bankruptcy.

Accordingly, this inquiry favors the district court's determination of equitable mootness.

### 3. Innocent Third Parties

We also examine "the effects that reversal will have on non-party creditors." *Paige*, 584 F.3d at 1343 (citing *SI Restructuring*, 542 F.3d at 136). We have described this question as "probably the foremost concern in our analysis." *Id*. (citing same). Indeed, we have observed "[t]his factor may even implicate the court's jurisdiction, since a court may lack jurisdiction over an appeal where the impact of reversal would fall most heavily on parties not before the court." *Id*. (citing *Rochman v. Ne. Utils. Serv. Grp. (In re Publ. Serv. Co.)*,

-16-

963 F.2d 469, 475–76 (1st Cir. 1992)). The precedence we afford this inquiry reflects the commonsense principle that equity favors innocent non-parties who have relied upon a confirmed plan.

Drivetrain argues the most significant unsecured creditors in this case accepted distributions with knowledge of its objections and pending appeal, and that—for this reason—they cannot be considered "innocent" third parties. The district court rejected this argument, instead concluding the third-party inquiry militated strongly in favor of equitable mootness. We endorse the carefully-reasoned analysis of the district court.[6]

Our precedent tells us third-party creditors who play a "pivotal role" in bankruptcy proceedings—perhaps by proposing their own plans or otherwise acting as a "main antagonist"—need not be considered innocent. *See id*. at 1343–44. But the district court appropriately concluded Drivetrain did not present evidence sufficient to establish that any creditor substantially participated

---

[6] Drivetrain likewise contends we should focus less upon the interests of existing creditors than third parties with an interest in a reorganized going concern. Other courts have described the values that underscore this inquiry similarly. *See, e.g.*, *In re Tribune Media Co.*, 799 F.3d 272, 280 (3d Cir. 2015) (Ambro, J.) ("The theme is that the third parties with interests protected by equitable mootness generally rely on the emergence of a reorganized entity from court supervision.") Although we recognize that formulation may well prove the better policy, our precedent expressly requires that we account for the interests of *creditors*. *Paige*, 584 F.3d at 1343 ("The effects that reversal will have on non-party *creditors* is probably the foremost concern in our analysis of equitable mootness." (emphasis added)).

in these proceedings beyond the involvement one might ordinarily expect of an interested third-party creditor. In the absence of such evidence, our precedent requires that we prioritize the interests of third-party creditors. *See id*.

We accordingly conclude this crucial inquiry likewise favors the district court's determination of equitable mootness.

### 4. Public-Policy Needs

We next consider "the proper balance between the equitable considerations of finality and good-faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of an adverse bankruptcy-court order." *Id*. at 1347 (cleaned up) (quoting *First Union Real Estate Equity & Mortg. Inv. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992)). We have observed that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed." *Id*. (quoting *LTV Aerospace v. Reomar, Inc. (In re Chateaugay Corp.)*, 988 F.2d 322, 326 (2d Cir. 1993)). Against this *de facto* presumption in favor of mootness, we have cited credible allegations of "bad-faith dealings" between debtor and creditors or "a lack of disinterestedness on the part of the trustee" as potential countervailing concerns. *Id*.

The district court concluded that Drivetrain—in seeking to undermine the good faith of ABBK's principal creditors—did not raise any allegations that

-18-

would implicate either concern. Moreover, the ABBK trustee has, with prejudice, withdrawn millions of dollars in inter-company claims from the Missouri bankruptcy. The prospect of cannibalizing one related proceeding for the benefit of another implicates serious questions relating to both finality and reliance. To the extent this inquiry requires that we weigh the various equities associated with the values of finality and reliance, we believe that balance decisively favors the ABBK trustee.

Although not dispositive, this inquiry also favors the district court's determination of equitable mootness.

### 5. *Impact on Reorganization*

We also examine "the likely impact upon a successful reorganization of the debtor" in the event an appellant's challenge is upheld. *Id*. at 1339. Drivetrain understandably protests that no reorganization has taken place, and that none will. The district court accepted this contention for the sake of argument and assumed this inquiry therefore militated against its determination of equitable mootness. For reasons already described, we are not prepared to erect the categorical bar that Drivetrain seeks in cases of a Chapter 11 liquidation. But we recognize that a liquidation masquerading as a reorganization likely will not implicate the same concerns that animate determinations of equitable mootness in cases where a going concern emerges from the bankruptcy process.

We accordingly conclude this inquiry militates against a determination of equitable mootness.

### 6. *Quick Look at Merits*

We lastly ask whether—upon a "quick look" at its merits—an appeal from plan confirmation presents any legally meritorious or equitably compelling challenge. *Id*. Both the bankruptcy court and the district court repeatedly rejected Drivetrain's legal and equitable arguments. We see no reason to disturb the careful work of the district court.

Drivetrain contends the bankruptcy court abridged its due-process rights in the way it considered objections, and that the bankruptcy court erred as a matter of law in permitting an oral modification to underlying agreements that contained "no modification" provisions. We disagree. In fact, the bankruptcy court held an adversary proceeding where witnesses were heard and evidence submitted. It then submitted detailed findings of fact and conclusions of law, which the district court endorsed. Given that related bankruptcies in both Delaware and Missouri also saw inter-company claims subordinated, we see no legal or equitable basis for reversal on this record.

Indeed, the bankruptcy court appropriately concluded the available evidence supported separate classification of the inter-company claims, as well as their subordination to claims of general unsecured creditors. The bankruptcy

court credited testimony that the Abengoa subsidiaries did not expect to be repaid for the services they provided, and we doubt any third party operating at arm's length would have extended ABBK credit in this manner.

Moreover, we note the district court appropriately endorsed the bankruptcy court's alternative speculation that—in the case of a hypothetical Chapter 7 liquidation—the inter-company claims would be treated no differently. When compared to general unsecured creditors, the inter-company creditors possessed unique access and knowledge by virtue of shared ownership, management, and objectives. These differences support the subordination of the inter-company claims beneath those of the general unsecured creditors. *See, e.g.*, *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 226 (Bankr. D.N.J. 2000).

This inquiry accordingly favors the district court's determination of equitable mootness.

*   *   *

For the foregoing reasons, we conclude the district court did not abuse its discretion in dismissing Drivetrain's appeal of the confirmed plan of liquidation as equitably moot.[7]

---

[7] Drivetrain also challenges the district court's refusal to bar the ABBK trustee from seeking equitable relief on the basis of unclean hands. Under Delaware law—which governs the liquidating trust agreement—courts *may* invoke the doctrine of unclean hands where the party seeking equitable relief has

(continued...)

-21-

# III. Conclusion

We accordingly AFFIRM the judgment of the district court in dismissing Drivetrain's appeal of the confirmed plan of liquidation as equitably moot. Because this disposition extinguishes whatever live controversy may have sustained Drivetrain's appeal of the district court's denial of a stay of enforcement and implementation of the plan of liquidation, we likewise DISMISS that action as moot.

---

[7](...continued)
engaged in conduct involving fraud, deceit, unconscionability, or bad faith. *E.g.*, *Sun Microsystems, Inc. v. Versata Ents., Inc.*, 630 F. Supp. 2d 395, 410 (D. Del. 2009). Because Drivetrain has developed no evidence to support a requisite inference of fraud, deceit, unconscionability, or bad faith, we accordingly conclude the district court did not abuse its discretion in refusing to bar the ABBK trustee from seeking equitable relief. *See Castle v. Cohen*, 676 F. Supp. 620, 627–28 (E.D. Pa. 1987) (concluding the failure to establish fraud, deceit, unconscionability, or bad faith will preclude the invocation of the doctrine of unclean hands), *aff'd* 840 F.2d 173, 178 (3d Cir. 1988).