# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 28, 2008

Charles R. Fulbruge III
Clerk

No. 07-50912

In the Matter of: SI RESTRUCTURING, INC.; SRE RESTRUCTURING, INC.

Debtors

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN C. WOOLEY; JEFFREY J. WOOLEY

Appellants

v.

DENNIS FAULKNER, Plan Administrator of SI Restructuring, Inc.

Appellee

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS and SOUTHWICK, Circuit Judges, and CLARK, District Judge.[*]

W. EUGENE DAVIS, Circuit Judge:

This is an appeal from a district court order affirming a bankruptcy court's order granting a Plan Administrator's motion ("motion") authorizing disbursal of a reserve fund in the amount of $500,000.00, which had been established to

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

pay the additional secured claims of John and Jeffrey Wooley ("Appellants" or "the Wooleys"). Because the bankruptcy court erred in granting the motion, we vacate the district court order and remand this case to the bankruptcy court with instructions to reinstate the reserve through disgorgement of Appellee's attorneys' fees in an amount necessary to compensate Appellants for their additional allowed secured claims, up to $500,000.00. The amount Appellants are entitled to receive from the reserve fund is to be determined by the bankruptcy court on remand.

I.

This appeal is closely related to Wooley v. Faulkner (In re SI Restructuring, Inc.)(Wooley I),[1] which we decided on June 20, 2008. By way of background, in that case, we held that the bankruptcy and district courts erred in equitably subordinating the Wooleys' claims from secured claims to unsecured claims.[2] During the pendency of the equitable subordination litigation, the plan provided partial protection to the Wooleys by requiring a distribution to the Wooleys of $2,867,600.00.[3] The plan provided protection for the remainder of Appellant's claims in a reserve fund. This plan provision provides:

> Notwithstanding the foregoing, pending further order of the [C]ourt after notice and a hearing in [the] Adversary Proceeding [to determine, in part, whether the Wooleys' secured claims should be equitably subordinated] . . . the Debtors shall segregate and hold not less than $500,000.00 in the Distribution Reserve for satisfaction of any of the Wooleys' Claims that become Allowed Secured Claims. The Plan Administrator may seek to reduce the amount held for

---

[1] No. 07-50872, 532 F.3d 355 (5th Cir. 2008).

[2] The Wooleys also have unsecured claims against the estate, but those claims are not the subject of this appeal.

[3] The Wooleys posted a letter of credit in the amount of $2,939,200.00 with the Plan Administrator which the Administrator was authorized to liquidate if the Wooleys' secured claims were subordinated.

satisfaction of the Wooleys' Claims or seek to spend or otherwise disburse such funds through motion to the Bankruptcy Court. The final allowance or disallowance of the Wooleys' Claims and the validity, extent[,] and priority of the liens securing the Wooleys' Claims shall be determined by the Bankruptcy Court in Adversary Proceeding 05–5055 . . . .

This paragraph in the plan was primarily designed to preserve no less than $500,000.00 in the estate for payment of the Wooleys' allowed secured claims against the estate. Secondarily, this paragraph recognized the right of the Plan Administrator to seek the approval of the bankruptcy court to disburse funds from the fund for other purposes.

After the bankruptcy court rendered judgment in favor of the Plan Administrator and equitably subordinated the Wooleys' claims, the Plan Administrator moved the bankruptcy court for permission to disburse the $500,000.00 reserve fund to pay the Plan Administrator's attorneys' fees. The bankruptcy court granted the motion. The bankruptcy court reasoned that it was no longer necessary to maintain the reserve fund for satisfaction of the Wooleys' claims. The court concluded that, even if the Wooleys were to prevail on appeal, they had already been paid in full on their secured claims. In summary, the bankruptcy court granted the motion because it reasoned that the Wooleys had no allowed secured claims and, therefore, the $500,000.00 reserve was "superfluous."

The district court affirmed the bankruptcy court. The district court explained that because the Wooleys lost in the Adversary Proceeding in the bankruptcy court (which ruling was affirmed by the district court) they had no allowed secured claims, and the bankruptcy judge was justified in granting the Plan Administrator's motion to begin disbursing the reserve fund. Although the district court acknowledged that the Wooleys' appeal of the Adversary

Proceeding was still pending in this Court, it concluded that Appellants could not show a likelihood of success on the merits of the appeal.

By reversing the judgment of the district court in Wooley I, this Court determined that the Wooleys' secured claims should be fully recognized.

The question that remains for this Court to decide is whether the Wooleys' allowed secured claims exceed the $2,867,600.00 they have already received and, if so, whether disbursal of the $500,000.00 reserve was in error. For reasons we discuss below, we conclude that the Wooleys are so entitled, and the district court should not have affirmed the bankruptcy court's order allowing for disbursal of the $500,000.00 reserve.

II.

This Court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court.[4] Generally, a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo.[5]

A.

We deal first with Appellee's argument that this Court does not have jurisdiction to hear the appeal. The jurisdictional argument has four premises: (1) that the appeal is untimely, (2) that Appellants failed to exhaust remedies in the bankruptcy court, (3) that this action is a collateral attack on the judgment in the Adversary Proceeding and (4) that the action is equitably moot.

---

[4] U.S. Dep't of Educ. v. Gerhardt (In re Gerhardt), 348 F.3d 89, 91 (5th Cir. 2003) (citing Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 387 (5th Cir. 2001)).

[5] Id. (citing Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 508 (5th Cir. 2003)).

Appellee argues first that this appeal is untimely. The bankruptcy court entered the order allowing disbursal of the reserve funds on April 23, 2007. Upon counsel's oral request, the bankruptcy court granted the Wooleys a ten-day stay to give them time to seek a stay from the district court. The Wooleys sought such a stay from the district court, which was denied on May 30, 2007. On July 13, 2007, the district court entered an order affirming the bankruptcy court's order allowing disbursal of the reserve funds. The Wooleys filed their notice of appeal to this Court on July 18, 2007. Appellee argues that the Wooleys' appeal came more than thirty days after the district court's denial of a stay. This appeal, however, is not from the order denying the stay; it is an appeal of the district court's order affirming the bankruptcy court's order permitting the disbursal of the $500,000.00 reserve. The appeal is timely and this argument has no merit.

Appellee argues next that Appellants failed to exhaust their remedies in the bankruptcy court. Appellee contends that Appellants did not comply with Bankruptcy Rule 8005, which requires that a motion for stay be presented to the bankruptcy judge in the first instance.[6] Appellants initially moved for a stay in the bankruptcy court, and the bankruptcy judge granted a ten-day stay, adding that Appellants would need to then seek further affirmative stay relief. Appellants accordingly filed a motion for a stay in the district court, which was denied. The district court explained that, technically, Rule 8005 was not complied with, but it noted that when the bankruptcy court granted a ten-day stay, it was "abundantly clear that no stay, other than a ten[-]day stay to allow appellate review" would be granted by the bankruptcy court. Thus, we agree with the district court that, under the circumstances, the Appellants' failure to

---

[6] Fed. R. Bankr. P. 8005.

5

seek an additional stay from the bankruptcy court in this case did not violate Rule 8005.

Appellee argues next that Appellants' claim to funds in the reserve is a collateral attack on the judgment in the Adversary Proceeding. Because this Court has reversed the lower court's judgment in the Adversary Proceeding, this argument is without merit.

Appellee argues finally that this appeal is equitably moot because the reserve fund has been disbursed, the plan has been substantially consummated and the relief Appellants seek would undermine the plan. "The concept of [equitable] 'mootness' from a prudential standpoint protects the interest of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented."[7] The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties. For the doctrine of equitable mootness to apply, the Court must determine: " . . . (i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan."[8]

Assuming a stay of the bankruptcy court's disbursal order was not obtained, we examine the second and third prongs. At this juncture, the plan has indisputably been substantially consummated. "Substantial consummation of a . . . plan is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate court to grant effective relief."[9] Thus,

---

[7] Manges v. Seattle-First Nat'l Bank (Matter of Manges), 29 F.3d 1034, 1039 (5th Cir. 1994).

[8] Id.

[9] Id. at 1043 (citing Frito-Lay, Inc. v. LTV. Steel Co., (In re Chateaugay Corp.), 10 F.3d 944, 952 (2d Cir. 1993) (citing In re AOV Ind., 792 F.2d 1140, 1148 (D.C. Cir. 1986))).

the third prong — whether granting Appellants' requested relief would unravel the plan or "unscramble the eggs,"[10] so to speak, — is our concern. The relief requested by Appellants is a return to the reserve fund of monies which were paid to Appellee's counsel. They do not seek any return of money to the estate from third party creditors.

It is clear that Appellee's counsel, who was paid from the reserve fund, is not a party who is not before the court. Further, Appellants cite persuasive authority supporting their argument that equitable mootness ought not prevent the disgorgement and return to the estate of attorneys' fees. The Ninth Circuit stated the rule as follows: "[A]n order compelling disgorgement of [attorneys'] fees and expenses would not require the bankruptcy court to unravel a complicated bankruptcy plan" but instead "would require only that one party disgorge the money it has received, money that would then be distributed pursuant to the bankruptcy court's final decree."[11] The D.C. Circuit has also found that a challenge to the disbursement of fees to attorneys is still capable of resolution, regardless of the degree of plan consummation.[12] Similarly, the First Circuit has held that where monies disbursed to a Trustee could be recovered with relative ease, equitable mootness ought not apply.[13]

In a recent opinion, this Court held that dismissal for equitable mootness was inappropriate where the appeal dealt only with aspects of a Chapter 11 plan confirmation that solely concerned professional compensation, reasoning that in

---

[10] See id. at 1040.

[11] See Focus Media, Inc. v. Nat'l Broad. Co. (In re Focus Media, Inc.), 378 F.3d 916, 923–24 (9th Cir. 2004) (citing S.S. Retail Stores Corp. v. Extreme (In re S.S. Retail Stores Corp.), 216 F.3d 882, 884 (9th Cir. 2000)).

[12] In re AOV Ind., 792 F.2d at 1149.

[13] Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 49 (1st Cir. 1998).

such a case, there is "no potential adverse effect on the plan or third parties."[14] We agree with these authorities and conclude that equitable mootness does not prevent our consideration of the merits of this appeal.

B.

Turning to the merits of the appeal, our first task is to interpret the language of the plan in order to determine the reason the $500,000.00 reserve fund was established. Appellants contend that the fund was created for the purpose of satisfying their allowed secured claims. Appellee argues that the reserve had a dual purpose — that it was also intended to be used by the Plan Administrator, upon his motion. Based on the plain language of the plan provision quoted supra, both parties are correct. The primary purpose of the reserve fund provision was to satisfy the Wooleys' allowed secured claims. Secondarily, the Plan Administrator was also allowed to move the bankruptcy court to allow disbursal of that reserve for other purposes. Appellants do not contend that the Plan Administrator had no authority to move the bankruptcy court to disburse the funds to pay counsel. The issue for decision is whether the district court erred in affirming the bankruptcy court's grant of the Plan Administrator's motion allowing disbursal of the reserve funds to pay counsel.

Appellee contends that under this Court's opinion in Wooley I, the Wooleys have no allowed secured claims in excess of the $2,867,600.00 they have received. Appellants contend, however, that the amount they received satisfies only part of their allowed secured claims for two reasons. First, they argue that their claim exceeded the amount paid to them and it was understood that the amount of their claim would be resolved after the subordination issue was

---

[14] Hilal v. Williams (Matter of Hilal) No. 07-20571, 2008 WL 2655796, at *2 (5th Cir., July 8, 2008) (citing, inter alia, In re Zenith Elecs. Corp., 329 F.3d 338, 346–47 (3d Cir. 2003) (appeal seeking disgorgement of fees paid to professionals not equitably moot), In re S.S. Retail Stores Corp., 216 F.3d at 884–85 (appeal seeking disgorgement of attorneys' fees not equitably moot), and In re Int'l Envtl. Dynamics, Inc., 718 F.2d 322, 325–26 (9th Cir. 1983) (appeal challenging award of counsel fees not equitably moot)).

decided. Second, they contend that they are also entitled to interest and attorneys' fees which should also be recognized as secured claims. We consider first the Wooleys' claim for interest and attorneys' fees.

Section 506(b) of the Bankruptcy Code provides that:

> [t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which the claim arose.[15]

The Revision Note and Legislative Reports for this provision state that a creditor with an oversecured claim is entitled to reasonable fees (including attorneys' fees), costs, or charges and specifies that these fees, costs, and charges "are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim."[16] The United States Supreme Court has explained that "[r]ecovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose."[17] NORTON BANKRUPTCY LAW AND PRACTICE states that:

> The Bankruptcy Code and Rules do not indicate how the holder of an oversecured claim should assert its right to accumulated interest, fees, etc. Presumably, the creditor could indicate on the face of its proof of claim that it claims interest or other costs incurred after the filing of the proof of claim.[18]

---

[15] 11 U.S.C. § 506(2)(b).

[16] 11 U.S.C. § 506 (West 2004) (Historical and Statutory Notes) (Revision Notes and Legislative Reports; 1978 Acts).

[17] U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).

[18] William L. Norton, Jr., 7 NORTON BANKRUPTCY LAW & PRACTICE § 146:11 (3d ed. 2008).

Our record review confirms that the Wooleys were oversecured and that they claimed interest and attorneys' fees on their proofs of claim and attachments thereto. The proofs of claim filed by the Wooleys clearly show the amounts the Wooleys claimed, the value of the collateral (over)securing their claim, the interest through the date of filing, and the promissory notes' provisions for attorneys' fees. Although no explicit agreement between the parties or express ruling by the bankruptcy court deferred the determination of interest and attorneys' fees until after the subordination hearing, we are persuaded from the record that the parties and the court were proceeding on this assumption.

First, Local Bankruptcy Rule 7054(d) lays down the general rule that statements of attorneys' fees shall be submitted by motion after entry of judgment. This is a sensible general rule that recognizes that it is inefficient to hear evidence on fees and consider an award of attorneys' fees before the court has decided who is the prevailing party.

Additionally, the pretrial order does not list interest or attorneys' fees as issues or list witnesses to testify about the reasonableness of those fees. This pretrial order is consistent with the Appellants' argument that the parties and the court contemplated following the general rule and litigating this issue after it determined which party prevailed. In sum, the record does not support Appellee's argument that the Appellants were required to establish the amount of its claim for interest and attorneys' fees in the Adversary Proceeding.

We are also persuaded that a genuine unresolved dispute existed over the amount of the Wooleys' claim exclusive of interest and attorneys' fees. The Wooleys filed a Motion for Relief from Automatic Stay, or for Adequate Protection, Regarding Secured Claims on May 18, 2005 and asserted that the creditor's committee and the Wooleys "have agreed to a distribution of $3,180,000.00 and the posting of a letter of credit in the amount of

$3,250,000.00" and that "[t]he actual amount of the secured claims of the Wooleys will be determined in a future proceeding following the conclusion of the adversary proceeding brought by the Creditors Committee."

The Plan Administrator responded to that motion questioning "the necessity and wisdom of paying disputed claims". The response stated further that "however to the extent the Wooleys meet their burden of proof and convince the Court that the relief requested is not harmful to the estate, the Debtors acquiesce."

The court ruled on the Wooleys' motion by essentially granting it and ordering debtors "to distribute up to the amount of $2,867,500.00 (Two Million Eight Hundred Sixty-Seven Thousand Five Hundred Dollars and No Cents) as directed by the Wooleys in exchange for an irrevocable letter or letters of credit in the aggregate amount of $2,939,200.00 (Two Million Nine Hundred Thirty-Nine Thousand Two Hundred Dollars and No Cents)." The only explanation in the record for the variance in the amount of the Wooleys' claim set forth in the motion ($3,180.000.00) and the amount transferred to the Wooleys ($2,867,500.00) is from the Wooleys' filings asserting that they were only able to obtain a letter of credit in the amount of $2,939,200.00 so that the distribution to them was correspondingly reduced. Without commenting on when the amount of the secured claims would be resolved, the court stated that "[f]urther, such arrangement shall remain in place until the resolution of the secured claims asserted against the Debtors' estates by the Wooleys pursuant to a final order of this [c]ourt . . . ."[19]

---

[19] Also in the hearing before the district court in which the Wooleys were seeking a stay of the bankruptcy court order disbursing the reserve fund, counsel for the Plan Administrator sought to make the point that a stay should not be granted:

First, the – the creditors made a decision a couple of years ago to go ahead and enter into this agreement whereby a letter of credit would be posted and the Wooleys would be paid the lion's share of their asserted claim. In our view, it's the entire amount of their asserted claim. There's a dispute over whether or not

Because we have determined that the Wooleys were oversecured and are entitled to litigate the amount of their secured claims including post petition interest and attorneys' fees, we conclude that the bankruptcy and district courts erred in determining that the reserve fund expressly negotiated by the parties to protect the Wooleys' secured claims in excess of the amount paid to them was "superfluous." For the reasons explained above, the bankruptcy court and the district court erred in concluding that the Wooleys had no secured claims for sums in excess of the amount paid to them.

Based on the foregoing, we conclude that the district court erred in affirming the bankruptcy court's order authorizing disbursal of the reserve fund to pay the Plan Administrator's counsel. Therefore, we vacate the judgments of the district court and the bankruptcy court and remand this case to the bankruptcy court with instructions to: (1) determine the amount of the Wooleys' remaining allowed secured claims for attorneys' fees and interest pursuant to 11 U.S.C. § 506(b); and (2) order disgorgement of Appellee's counsel's attorneys' fees paid out of the reserve fund not to exceed $500,000.00, in order to satisfy the Wooleys' allowed secured claims.

VACATED.

REMANDED.

---

it was. They've had that money for a couple of years ostensibly to invest however they want. It hasn't been in the control of the plan administrator. (Emphasis added).