**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 24, 2013

No. 12-50718

Lyle W. Cayce
Clerk

In the Matter of: AGE REFINING, INCORPORATED,

Debtor

------------------------------

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Appellant

v.

ERIC J. MOELLER, Chapter 11 Trustee for Age Refining, Incorporated,

Appellee

Cons w/
No. 12-50805

In the Matter of: AGE REFINING, INCORPORATED,

Debtor

------------------------------

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Appellant

v.

CHASE CAPITAL CORPORATION;
ERIC MOELLER, Chapter 11 Trustee;
LIQUIDATING TRUSTEE RANDOLPH N. OSHEROW,

Appellees

No.  12-50718, cons. w/
No. 12-50805

————————————

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:12-CV-64

————————————

Before JONES and CLEMENT, Circuit Judges, and KAZEN[*], District Judge.

EDITH H. JONES, Circuit Judge:[**]

These are consolidated appeals by the Official Committee of Unsecured Creditors ("Committee") of orders by the bankruptcy court in the Chapter 11 case of AGE Refining, Inc. ("AGE").  AGE owned a refinery in San Antonio and was owned and operated by Glen Gonzalez and persons affiliated with him ("Gonzalez Defendants").  The Committee appeals from an order approving the settlement reached between JPMorgan Chase Bank, N.A. and Chase Capital ("Chase") and the AGE bankruptcy estate ("Chase Settlement," refers either to the settlement or the litigation over it).  The Committee also appeals from confirmation of AGE's restructuring plan ("Plan," refers either to the plan or litigation over it).  Essentially, the same issues are raised in each appeal, and the critical issue is whether the district court correctly dismissed each appeal from the bankruptcy court for equitable mootness.  Because the district court erred, we must vacate and remand.

## BACKGROUND

Chase was AGE's primary secured creditor before bankruptcy and also provided AGE with post-petition financing, permitted AGE to use Chase's cash

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No.  12-50718, cons. w/
No.  12-50805

collateral, and was granted post-petition liens on AGE's assets.[1]  The bankruptcy court appointed Eric Moeller as the Chapter 11 Trustee ("Trustee").  Refinery equipment and real property (the "Refinery") and other AGE tangible assets—including property adjacent to the refinery (the "Adjacent Real Property") and the Elmendorf Tank Farm (the "Tank Farm")—were eventually sold to NuStar for $41 million.[2]  The legal documents effectuating the sale did not allocate the sale proceeds between Chase's encumbered collateral and unencumbered assets.  No valuation testimony on the Refinery was presented to the bankruptcy court.

Chase, arguing it was oversecured, made claims against the estate that included $40.2 million in pre-petition claims and post-petition interest exceeding $6 million.  At that time, other administrative priority claims against the debtor's estate exceeded $5.5 million and unsecured claims totaled nearly $9 million.[3]  The Trustee and the Committee contested Chase's  claims, arguing that Chase's collateral did not have a value in excess of its claims. The Trustee negotiated with Chase, however, out of concern that litigation of the claims would leave the estate in a worse position than compromise.  The Trustee and Chase reached the Chase Settlement regarding Chase's claims.  The bankruptcy court approved the settlement over the Committee's objections that it overpaid

---

[1] In its brief for the Chase Settlement Appeal, Chase characterizes these as "liens on [AGE's] unencumbered assets."  The Committee, on the other hand, states that the Chase claim "did not attach to unencumbered assets[, including] the Tank Farm, the Adjacent Real Property, the Redfish Bay Terminal and avoidance claims against Gonzalez."  It appears that, while Chase may not have had liens on the assets identified by the Committee, Chase did have liens on other unencumbered assets.

[2] Platinum assets were also sold for $2,220,292 and working capital for $4.8 million. The NuStar sale did not include the Redfish Bay Assets that were later sold for $6.5 million. Estate assets also included an insurance claim settled for $2.35 million.

[3] It is unclear from the briefing whether these represent the entirety of the assets of and claims on the estate.

No. 12-50718, cons. w/
No. 12-50805

Chase. The Committee appealed the order approving the Chase Settlement but did not seek a stay pending appeal. Chase was paid the full $40.2 million of its asserted pre-petition claim and agreed to "cap" its claim for post-petition interest at $5 million.

In a separate proceeding, the Trustee settled and released the estate's claims against the Gonzalez Defendants, who agreed to pay $3.6 million to the estate in return for dismissal with prejudice of the Trustee's claims against them. The settlement stipulated that the transfer must be made by the time the Confirmation Plan was final, even if appealed, so long as a stay was not issued. The Gonzalez Defendants paid the agreed amount, and the bankruptcy court entered the agreed order.

The Trustee submitted a final reorganization plan that incorporated the Chase Settlement. The Plan designated Chase as an "impaired" creditor pursuant to 11 U.S.C. § 1124; thus, Chase became entitled to vote to approve the Plan, to the extent of its post-petition "unsecured" claim, in the same class as the unsecured creditors of AGE. The bankruptcy court approved the Plan over the Committee's objections that it overpaid Chase and misclassified Chase's "unsecured" claim. The Committee appealed the order approving the Plan and sought a stay.

The bankruptcy court orally denied the motion for a stay of the Plan and laid out its reasoning in extensive detail. The bankruptcy court held that the Committee was likely to succeed on the merits because Chase's claim was not a pre-petition claim and, as a post-petition entitlement, it was not a claim entitled to vote. Hence, the requirements of 11 U.S.C. § 1129(a) for confirmation were not satisfied because confirmation was carried based on Chase's vote. The bankruptcy court added, while noting its irrelevance given the preceding conclusion, that Chase's claim was "impaired" because the Plan altered Chase's

4

No.  12-50718, cons. w/
No.  12-50805

rights under the Chase Settlement by delaying until post-confirmation a $200,000 payment it was otherwise immediately entitled to receive in the Chase Settlement.  In general, however, the bankruptcy court held the Chase Settlement was not intertwined with or contingent on the Plan.

Turning to the requirement of irreparable harm, the bankruptcy court reasoned that "[i]f the amount that's actually paid is determined to be too much, an appellate court could easily fashion an order directing return of monies to the estate for redistribution without adversely affecting the balance of the plan." The bankruptcy court added that "language in *Pacific Lumber* . . . strongly suggests . . . that the appellate courts might believe themselves capable of addressing the merits of an appeal even in the absence of a stay" and that *Pacific Lumber* suggests that a stay was not necessary because the Committee's claims against Chase would not be equitably moot even without a stay.[4]  The bankruptcy court refused to enter a stay, in part, to ensure money from the Gonzalez Defendants was transferred according to the Plan and the Gonzalez settlement.

The Trustee distributed the proceeds from the settlement with the Gonzalez Defendants, made distributions to AGE's remaining administrative claimants, and paid the Committee's counsel.  A liquidating trust was created and Randolph Osherow was appointed Liquidating Trustee.  Osherow has filed claim objections, all but one of which have been resolved.

On appeal, the district court dismissed the Committee's appeals of both the Chase Settlement and the Plan as equitably moot.  The court reasoned that it could not "simply strike the alleged wrongful part of the settlement."  The district court further reasoned that "overturning the order approving the Plan

---

[4] *See In re Pac. Lumber Co.*, 584 F.3d  229, 240 (5th Cir. 2009).

No.  12-50718, cons. w/
No. 12-50805

and [Chase] Settlement would affect the rights of parties who are not before the Court; namely, the administrative claimants, the priority unsecured creditors, the Gonzalez Defendants, and the trustee of the liquidating trust."

## DISCUSSION

This court reviews bankruptcy court decisions using the same standards as the district court on appeal.  We do not overturn findings of fact by the bankruptcy court unless clearly erroneous, and we review issues of law *de novo*. *In re GWI PCS 1 Inc.*, 230 F.3d 788, 799 (5th Cir. 2000).  We review matters committed to the bankruptcy court's discretion for abuse of that discretion.  *In re Sadkin*, 36 F.3d 473, 475 (5th Cir. 1994).  Equitable mootness is a question of law, and we review its grant by the district court *de novo.  In re GWC PCS 1*, 230 F.3d at 799–800.

Challenging the district court's equitable mootness dismissals, the Committee argues that equitable mootness does not apply because the rights of non-parties would not be affected by a reversal of either the Chase Settlement or the Plan.  Chase defends the equitable mootness dismissals on the grounds that the Committee did not receive a stay (and, for the Chase Settlement, did not seek one); the Chase Settlement and Plan have been substantially consummated; and reversal of either would affect the rights of non-parties, including the Gonzalez Defendants and administrative claimants.

Equitable mootness is a judge-made doctrine but, unlike Article III mootness, is not rooted in the Constitution.[5] *In re Pac. Lumber*, 584 F.3d at 240.  It is "a kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." *Id.*

---

[5] "Article III mootness concerns arise when a judicial ruling would have no effect; equitable mootness applies when a judicial ruling might have too much effect on the parties to a confirmed reorganization." *In re Pac. Lumber*, 584 F.3d at 240. (citing *In re Continental Airlines*, 91 F.3d 553, 569 (3d Cir. 1996) (*en banc*) (Alito, J., dissenting)).

6

No. 12-50718, cons. w/
No. 12-50805

(citing *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994)). In applying equitable mootness, the Fifth Circuit seeks to "strik[e] the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him." *In re Manges*, 29 F.3d at 1039. Equitable mootness should be applied with "a scalpel rather than an axe." *In re Pac. Lumber*, 584 F.3d at 240. "[E]quitable mootness applies to specific claims, not entire appeals." *In re Pac. Lumber*, 584 F.3d at 241. *But see In re Manges*, 29 F.3d at 1043 n.13 (refusing to strike the offensive portion of the plan of reorganization because "[t]he Bankruptcy Code provides that a plan may not be modified or amended after substantial consummation has taken place").

Three factors are analyzed in determining whether equitable mootness is warranted: "(i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re Manges*, 29 F.3d at 1039. Fifth Circuit precedent does not support the argument that a stay is invariably necessary to ward off equitable mootness. *See In re SCOPAC*, 624 F.3d 274, 281–82 (5th Cir. 2010) (holding equitable mootness inapplicable despite the creditors' having been denied a stay). This court has conducted appellate review of reorganization plan provisions where a stay had not been obtained and the reorganization plan had been substantially consummated, but where there would be no significant adverse consequences to the reorganization from appellate review of the issues at stake. *See, e.g.*, *In re SI Restructuring*, 542 F.3d 131, 136–37 (5th Cir. 2008); *In re Hilal*, 534 F.3d 498, 501 (5th Cir. 2008). This case law is easily applied to each of the appeals before us.

No.  12-50718, cons. w/
No.  12-50805

## A.  Plan

Regarding the AGE liquidation plan of reorganization, the first two factors concerning equitable mootness are not in dispute.  The Committee did not obtain a stay, and the plan has been substantially consummated.  The question, then, is what effect the relief requested, i.e., the potential repayment of money by Chase to the estate and re-allocation of those funds, would have on the rights of other parties and the success of the Plan.

Chase argues that vacating the Plan would affect the rights of non-parties such as the Gonzalez Defendants and administrative claimants.  The position of the Gonzalez Defendants played a large role in the bankruptcy court's decision not to stay the implementation of the Plan.  In particular, Chase asserts the bankruptcy court saw a need for a functioning channeling injunction to protect the Gonzalez Defendants from other lawsuits.[6]  The settlement with the Gonzalez Defendants, however, was separately approved by the bankruptcy court and not appealed.  The litigation against the Gonzalez Defendants has been dismissed with prejudice, and the Gonzalez Defendants have made their required payments to the Trustee.  Those claims cannot be reopened.  Nor does the Committee oppose the settlement with the Gonzalez Defendants.  *See In re Hilal*, 534 F.3d at 500 (noting that Hilal was opposing "only provisions relating to the Trustee," not "appealing the entire confirmation order").  In sum, there would be no adverse effect on the Gonzalez Defendants even if the Plan confirmation were judicially overturned.  The bankruptcy court labeled the

---

[6] The Bankruptcy Code empowers the bankruptcy court in some circumstances to issue "an injunction [barring] any action directed against a third party who is identifiable from the terms of such an injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third parties arises by reason of . . . the third party's involvement in the management of the debtor . . . ."  11 U.S.C. § 524(g)(4)(a)(ii) (2006).

No.  12-50718, cons. w/
No. 12-50805

possibility of other claims against the Gonzalez Defendants "speculative" because there was "no evidence that there are any such parties."

Significantly, Chase makes no attempt to show how the administrative priority claimants would be adversely affected.  The only change in the estate distribution that the Committee seeks is a smaller distribution to Chase and a larger distribution to the Committee.  In this liquidating plan scenario, under the particular facts of this case, "overturning the Plan" functionally would mean no more than re-allocation of money from Chase to other parties in interest.

There are no parties outside the scope of the Plan, such as parties to property sales or contracts involving the AGE estate, who could be prejudiced by revision of the Plan's payment scheme.  Accordingly, the district court erred in ruling that the Committee's appeal of the Confirmation Plan is equitably moot, and its dismissal order must be reversed.

## B.  Chase Settlement

The analysis for equitable mootness of the Chase Settlement is effectively identical, although there is grave doubt that equitable mootness should ever apply to the appeal of an adversary proceeding.  We have found no bankruptcy appeal, and Chase cited none, invoking equitable mootness to oust appellate courts from jurisdiction over adversary proceeding judgments.  An adversary proceeding is a discrete decisional unit within a bankruptcy case.  It is difficult to understand how equitable mootness—which intends to protect the rights of non-parties affected by a confirmation order appeal —conceptually applies to an adversary proceeding.

Be that as it may, and assuming *arguendo* that equitable mootness could apply, the only difference between this appeal and that of the Plan is that the Committee did not seek a stay of the Chase Settlement.  The Committee's failure to do so, however, is irrelevant.  *See In re UNR Indus.*, 20 F.3d 766, 770 (7th Cir.

9

No.  12-50718, cons. w/
No. 12-50805

1994) ("A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization.").  The non-impact on parties of appellate review of this settlement has been explained above.  Accordingly, the district court's ruling that the Committee's appeal of the Chase Settlement is equitably moot must also be reversed.

## C.  Merits

Holding that both of the Committee's appeals were equitably moot, the district court reached the merits of neither.  As the district court did not reach the merits, we will not reach them here, leaving them for the district court on remand.

## CONCLUSION

We REVERSE the district court's judgment of dismissal on both appeals and REMAND for further proceedings consistent with the above.