# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2015

Lyle W. Cayce
Clerk

No. 15-10122
Summary Calendar

In The Matter of:  STANLEY JUSTIN MCWILLIAMS,

> Debtor

STANLEY JUSTIN MCWILLIAMS,

> Appellant

v.

NATIONAL FARM LIFE INSURANCE COMPANY,

> Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-698

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:*

Stanley McWilliams appeals the district court's affirmance of the bankruptcy court's order awarding attorney's fees and expenses to National Farm Life Insurance Company.  For the following reasons, we AFFIRM the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10122

district court's order affirming the bankruptcy court's award of attorney's fees and expenses.

## I.

Stanley McWilliams ("McWilliams") is the President of Red Point Development, Inc. ("Red Point"), which in turn is the sole general partner of Race Street Properties, L.P. ("Race Street"). In 2009, National Farm Life Insurance Company ("NFLIC"), a Texas life insurance company, loaned Race Street $1,162,500 for a construction project, and McWilliams personally guaranteed the loan. In doing so, McWilliams signed a Note and Guaranty on the loan. In 2010, Race Street defaulted on the loan. NFLIC then accelerated the debt and foreclosed on the collateral securing the loan. Because the foreclosure proceeds did not satisfy the loan balance, NFLIC sued McWilliams, Race Street, and Red Point in state court for the deficiency. The parties settled in 2011, and the state court entered an Agreed Final Judgment in the amount of $874,768.19, broken out as follows: $781,086.95 for the loan deficiency, $18,681.24 for pre-judgment interest, and $75,000 for "reasonable attorney's fees."

McWilliams then filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the Northern District of Texas, Fort Worth Division, attempting to discharge the Agreed Final Judgment. Seeking to protect its judgment, NFLIC initiated an adversary proceeding. After a three-day bench trial, the bankruptcy court found that because McWilliams had obtained the loan from NFLIC by fraud, the judgment was nondischargeable. The bankruptcy court then entered a final judgment against McWilliams and awarded NFLIC costs and $99,177.87 in attorney's fees incurred during the adversary proceeding, which it calculated by taking 10 percent of the Agreed Final Judgment of $874,768.19 plus post-judgment interest of $117,010.51. This calculation was apparently based on a provision

2

No. 15-10122

of the note on the loan providing that attorney's fees and costs would generally be calculated as "10% of all amounts due."

McWilliams timely appealed the order awarding attorney's fees and costs to the Northern District of Texas under 28 U.S.C. § 158, and the district court affirmed. This appeal followed.

## II.

"This Court reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re SI Restructuring, Inc.*, 542 F.3d 131, 134-35 (5th Cir. 2008). We thus review the bankruptcy court's factual findings for clear error and conclusions of law de novo. *Id.* at 135. In Texas, the meaning of an ambiguous contract is a question of fact. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).[1]

## III.

A creditor that successfully contests the dischargeability of its claim in an adversary proceeding under 11 U.S.C. § 523 is entitled to recover attorney's fees if it has a contractual right to them under state law. *In re Luce*, 960 F.2d 1277, 1286 (5th Cir. 1992). Here, McWilliams does not dispute NFLIC's entitlement to attorney's fees—the Note and Guaranty expressly provide for their recovery in these circumstances—but he does dispute the amount of fees that the bankruptcy court awarded.

As relevant here, the Note provides that:

> If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee all costs of collection and enforcement, including

---

[1] The parties agree that Texas law applies to the underlying contract construction issue.

3

reasonable attorney's fees and court costs, paid to an attorney who is not an employee of Payee, in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise.

Similarly, the Guaranty provides that:

The term "<u>Guaranteed Indebtedness</u>" as used herein, includes (a) all indebtedness of every kind and character, without limit as to amount, whether now existing or hereafter arising, of Borrower to Creditor, regardless of whether evidenced by notes, drafts, acceptances, discounts, overdrafts, or otherwise, and whether such indebtedness be fixed, contingent, joint, several, or joint and several, including to [sic] not limited to that one certain Real Estate Lien Note in the principal amount of $1,162,500.00, dated July 27, 2009, executed by Race Street Properties, L.P., a Texas limited partnership, made payable to National Farm Life Insurance Company; (b) interest on any of the indebtedness described in (a) preceding; (c) any and all costs, attorney's fees, and expenses suffered by Creditor by reason of Borrower's default in payment of any of the foregoing indebtedness; and (d) any renewal or extension of the indebtedness, costs, or expenses described in (a) through (c) preceding, or any part thereof.

McWilliams contends that because the Agreed Final Judgment issued by the state court included $75,000 for "reasonable attorney's fees"—an amount equal to 9.4 percent of the original loan deficiency plus interest—the bankruptcy court erred in awarding NFLIC attorney's fees equal to 10 percent of the entire Agreed Final Judgment. Whether McWilliams is correct turns on the proper definition of the term "all amounts due" in the fee provision. We find this phrase to be ambiguous in this context, and thus its interpretation is a question of fact. *See Coker*, 650 S.W.2d at 394.

The Note states that if it "is collected or enforced through . . . bankruptcy," the debtor owes "[r]easonable attorney's fees," which shall be "10% of all amounts due." The bankruptcy court, adhering to the principle that "separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together," *Jim Walter*

*Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984), appears to have looked to the Guaranty's definition of Guaranteed Indebtedness—the total amount that McWilliams agreed to pay NFLIC—to construe "all amounts due." Effectively, the bankruptcy court viewed the terms "Guaranteed Indebtedness" and "all amounts due" as synonymous. And McWilliams agreed that his Guaranteed Indebtedness would include "any and all costs, attorney's fees, and expenses suffered by Creditor by reason of Borrower's default."[2] So even though the Agreed Final Judgment included an agreed-on sum purportedly attributable to attorney's fees,[3] at the time the bankruptcy court assessed attorney's fees under the Note's fee provision, the bankruptcy court found that the entire Agreed Final Judgment (plus post-judgment interest) constituted McWilliams's Guaranteed Indebtedness and thus "all amounts due."

We find that the bankruptcy court's factual determination of the contract term's meaning was not clearly erroneous. Other provisions in the Note and Guaranty, moreover, support that determination.

For example, both the Guaranty and the Note contemplate that McWilliams will be liable for attorney's fees through whatever proceedings are required to collect or enforce the debt, including bankruptcy. Note ("If this note or any instrument securing or collateral to it . . . is collected or enforced through . . . bankruptcy . . . , then Maker shall pay Payee all costs of collection and enforcement, including reasonable attorney's fees[.]"); Guaranty (providing that Guaranteed Indebtedness includes "any and all costs, attorney's fees, and

---

[2] Although the Guaranty provides that McWilliams would owe "any and all costs, attorney's fees, and expenses suffered by Creditor by reason of Borrower's default," the bankruptcy court construed the Note and Guaranty together and found that the parties intended to cap NFLIC's attorney's fees at 10 percent (unless NFLIC pleaded extra fees, and the bankruptcy court found that it did not).

[3] As the district court pointed out, the bankruptcy court "noted that the $75,000 for which the parties designated as 'attorney's fees' 'may or . . . may not have been' the amount of attorneys' fees that were actually incurred."

expenses suffered by Creditor by reason of Borrower's default"). Nothing indicates that in the Agreed Final Judgment, NFLIC somehow waived its entitlement to attorney's fees that it might incur in further proceedings needed to collect or enforce the debt. In other words, we see no reason to infer that the parties intended to permit McWilliams to discharge his responsibility for attorney's fees halfway through the collection process.

The Guaranty also contemplates that McWilliams's indebtedness would survive any number of changes in form. It provides that his indebtedness would not be "released, diminished, impaired, reduced, or affected" by, among other things, "any release, surrender, exchange, subordination, . . . any partial release of the liability of Guarantor, . . . any renewal, extension, and/or rearrangement of the payment . . . , or any adjustment, indulgence, forbearance, or compromise that may be granted or given by Creditor to Borrower of [sic] Guarantor." As the bankruptcy court noted, this provision indicates that the Agreed Final Judgment (however characterized) did not diminish McWilliams's obligation to pay attorney's fees of 10 percent of his entire obligation to NFLIC at the time of enforcement—even though he had agreed, in the Agreed Final Judgment, to an increase in his total indebtedness by some amount potentially attributable to attorney's fees.

In sum, when read together, the Note and Guaranty indicate that McWilliams agreed to pay attorney's fees of 10 percent of his total indebtedness to NFLIC at the time NFLIC collected or enforced the debt. We thus decline to disturb the bankruptcy court's factual findings and attorney's fees award.

IV.

For the foregoing reasons, the judgment is AFFIRMED.

6